445 So.2d 723 (1984)
LOUISIANA STATE BAR ASSOCIATION
v.
George J. DOWD.
No. 82-B-2940.
Supreme Court of Louisiana.
January 16, 1984.
Thomas O. Collins, Jr., Richard A. Deas, Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee', Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., Natchitoches, for relator.
Roy A. Raspanti, New Orleans, for respondent.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against George J. Dowd, a member of said association. The committee conducted an investigation of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. The committee by certified mail dated July 9, 1982 sent respondent notice of four separate specifications of misconduct which would be heard at a formal investigatory hearing to be held on July 15, 1982. Although respondent signed the receipt for the certified letter, he did not appear at the investigatory hearing held on the scheduled date; nor was he represented by counsel.[1]
Based on the evidence adduced at the formal investigatory hearing, the committee, by a majority vote, was of the opinion *724 that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law; that, specifically, respondent was guilty of the misconduct set forth in Specifications Nos. 1 and 2.
Specification No. 1 alleged:
In April of 1975, you were retained by B.G. Gaffney, Attorney at Law, to handle certain collection matters and that, despite repeated requests, you have failed, refused and neglected to advise Mr. Gaffney of the status of pending litigation, all in violation of Disciplinary Rule 6-101(A)(3)[[2]] of the Code of Professional Responsibility for this Association and, further, you failed, refused and neglected to take any action to protect the interest of your clients all in violation of said DR 6-101(A)(3).
Specification No. 2 alleged:
In 1978, you were retained by Sharon Ragas Giroir to represent her in a claim for Workman's Compensation. That, despite repeated requests, you have failed, refused and neglected to take necessary action to protect the interest of your client causing her injury and damage. You have also failed, refused and neglected to advise your client of the status of her claim or release necessary file material to her when requested. All in violation of Disciplinary Rules 1-102[[3]] and 6-101(A)(3) of the Code of Professional Responsibility for this Association.
The committee felt it had not proven the other two specifications of misconduct and deleted those charges when it filed a petition for disciplinary action against respondent in this court on December 21, 1982 under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. Thereafter, on motion by the committee, we appointed Paul V. Cassisa commissioner to take evidence and to report to this court his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation art. 15, § 6(b), (d).
A hearing before the commissioner was conducted on April 27, 1983. Respondent appeared at the hearing without counsel, whose presence was waived by respondent. The committee introduced in evidence, without objection, the entire record of the earlier investigatory hearing. Upon termination of the hearing, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law and recommended a one-year suspension from the practice of law as the appropriate disciplinary action. The committee filed its concurrence in the commissioner's findings of fact and conclusions of law and submitted the matter for this court's determination. Respondent filed exceptions to the commissioner's report. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Mitchell, 375 So.2d 1350 (La.1979).
Specification No. 1 concerns the failure of respondent, whose office was located in St. Bernard Parish, to obtain judgments on two matters referred to him in April of 1975 by B.G. Gaffney, a Houston attorney. The first case was a collection matter involving $690 allegedly owed on account by *725 Otis D. Martin to Johnston Testers, Inc. Respondent filed suit against Martin in Plaquemines Parish on July 11, 1975. Martin denied liability, claiming that he had paid the money owed. Nevertheless, respondent attempted to go to trial and obtained several trial dates. The first trial date, February 18, 1976, was continued because the case was scheduled second on the docket and was not reached by the trial judge. However, Mr. Gaffney also was unable to get a witness to trial on that date. Mr. Martin's attorney was unavailable on the second trial date, May 24, 1976. Another trial date was set for September 9, 1976, but the record does not reveal why the parties did not go to trial on this date. Throughout this period, respondent corresponded with Mr. Gaffney, keeping him informed of the status of the case. In a letter dated July 15, 1976, respondent indicated that he was having difficulty deposing Mr. Martin, who had twice cancelled scheduled depositions. In another letter to Mr. Gaffney dated July 14, 1977, respondent said that the trial judge had promised to set another trial date to coincide with the trial of the other matter referred to respondent by Mr. Gaffney. The record does not reveal whether this date was set. Apparently this was the last action taken by respondent on the Johnston case, which is still a viable case according to respondent.
The second matter referred to respondent by Mr. Gaffney is a suit for the value of a piece of oilfield equipment rented to Otis D. Martin by Houston Engineers, Inc. Houston Engineers alleged that the piece of equipment, which they valued at $5,876.76, was rented to Mr. Martin and was never returned. Mr. Martin contended that, in accordance with established business practices, he returned the item by delivering the equipment to the dock for Houston Engineers' pickup. Respondent filed suit in this matter in Plaquemines Parish on July 11, 1975 and again obtained many pretrial conference and trial dates that were subsequently continued. The first trial date was November 9, 1976. Again, the record does not reveal why the parties did not go to trial on that date, but the trial was rescheduled for December 6, 1977. However, the trial judge continued the trial because he was ill. Respondent wrote to the judge several times to have the trial date reset, and the judge finally scheduled a pretrial conference for September 8, 1978. Respondent had kept Mr. Gaffney informed of all action in the file up to July 18, 1978, which was the date of his last letter to Mr. Gaffney. This apparently was also the last action taken in the matter by respondent. According to respondent, the case is still viable.
Mr. Gaffney wrote a number of letters and made a telephone call to respondent between the dates of September 20, 1978 and April 15, 1980 seeking information on the status of the two cases. Respondent did not answer any of the communications, so Mr. Gaffney filed a complaint with the Louisiana State Bar Association on May 21, 1980. On December 2, 1980, respondent met with Mr. Deas of the bar association to discuss the complaint against him. Although he maintained that Martin was unavailable and without property, respondent promised to obtain "the judgment" but never fulfilled the promise. The bar association proceeded with disciplinary action against respondent. At the commissioner's hearing, respondent admitted that he was "wrong on two counts." First, he said he "should have sent Mr. Gaffney his file back a ... long time ago." Second, he should have "taken a judgment even though [the cases were] uncollectable." The commissioner in his findings of fact concluded that "it seems clear from the evidence that nothing was done by Dowd to complete these matters by trial and/or some ultimate settlement, nor did he advise Mr. Gaffney that he was no longer in a position to prosecute these collection matters and that these suits should be referred to others for appropriate handling." In his exceptions to the commissioner's report, respondent argues in his defense that Mr. Gaffney and his two clients suffered no damage besides delay in the two cases because the suits are still "viable" and that Mr. Gaffney could have gotten another attorney *726 to complete the handling of the matters but had not done so. Hence, he contends, no disciplinary sanctions should be imposed for his mere procrastination.
Specification No. 2 involves respondent's failure to file a worker's compensation claim for Mrs. Sharon Ragas Giroir who injured her hand while working part-time at K-Mart. Mrs. Giroir was injured on January 27, 1977 and received compensation payments from K-Mart from February 12, 1977 to April 7, 1978. After other treatments did not relieve the pain in Mrs. Giroir's hand, her doctor recommended surgery. Although a second doctor recommended by K-Mart advised that no operation was necessary, Mrs. Giroir did undergo surgery on January 12, 1978 and was discharged from her doctor's care on June 26, 1978 with a five percent permanent disability assigned to her wrist and hand. K-Mart refused to pay for the operation and discontinued compensation payments three months after the surgery. All but $359.40 of the hospital bill was paid by Mr. Giroir's hospitalization insurance. The Giroirs retained respondent to pursue Mrs. Giroir's compensation claims for further benefits and reimbursement of medical costs.
The parties do not agree as to when respondent was retained in this matter. Mrs. Giroir recalls contacting respondent before entering the hospital in January of 1978. She says she brought respondent her records in the case around February of 1978. Mr. Giroir also testified that they retained respondent before his wife's operation in January of 1978. Respondent does not remember being contacted in this matter until Mrs. Giroir received a demand letter from the hospital on January 18, 1979. However, the parties saw each other frequently during this period because respondent was defending the Giroirs in a civil rights violation case which was not resolved until April 17, 1979.
More importantly, the testimony of the Giroirs and respondent differs on whether respondent told the Giroirs he filed the compensation suit or said he would not file the suit until they advanced court costs. Respondent was not paid his fees for defending the Giroirs in the civil rights suit; nor was he reimbursed for the court costs he advanced them. Respondent also was not paid for representing Mr. Giroir's brother in his divorce although respondent claims that Mr. Giroir assured him that he would "see that" respondent was paid. Thus, because of these prior experiences with the Giroirs, respondent maintains that he told them in April or May of 1979 that he would not file suit unless he were given the court costs in advance. Respondent says he did not put this demand into writing because he frequently saw the Giroirs in his office regarding the civil rights suit.
The Giroirs, on the other hand, assert that, in the period from the time they retained respondent until sometime in 1979, respondent repeatedly assured them that he had filed the compensation suit and was awaiting a settlement check from K-Mart. Both Mr. and Mrs. Giroir specifically recall seeing respondent in Schwegmann's and being told that he filed suit. Mr. Giroir also testified that he asked respondent to return the file, but respondent did not comply. Mrs. Giroir alleged that respondent never asked her to advance the court costs because he told her that K-Mart had to pay them under the worker's compensation laws. Respondent, however, denies ever telling the Giroirs that he filed suit. He says he probably told them in Schwegmann's that he had filed a motion in the civil rights case, not the compensation case. The Giroirs filed a complaint with the Louisiana State Bar Association in February of 1981 after they discovered that respondent had not filed suit. They testified that they were pursuing a malpractice action against respondent, but respondent's attorney in oral argument before this court stated that no suit has been filed.
The Commissioner in his findings of fact concluded that, "[w]hile the evidence is conflicting, the preponderance of the evidence is that Dowd represented to both Mr. and Mrs. Giroir that suit had been filed on their behalf against K-Mart." As to respondent's *727 claim that he told the Giroirs he would not file suit until he received court costs, the commissioner observed, "Dowd has no correspondence or any invoice to the clients which would corroborate his position.... To the contrary, both Mr. and Mrs. Giroir testify that they were repeatedly assured by Dowd that the suit had been filed."
Respondent does not deny that he never filed Mrs. Giroir's worker's compensation claim and that the claim is now prescribed. Nor does he deny his failure to obtain judgments in the two matters referred to him by Mr. Gaffney. Respondent says he ignored his law practice because of marital difficulties and completely closed his office in September of 1979 when he separated from his wife. He moved to Poydras, Louisiana and "didn't do anything for about a year" because of emotional trauma. He argues in mitigation of the charges against him that there are no allegations of dishonesty or of misappropriation of clients' funds. The clients referred to him by Mr. Gaffney did not even suffer any damage as a result of his inaction. Furthermore, he points out that the committee must establish his guilt by clear and convincing evidence, but the commissioner did not meet this burden in his finding by a mere preponderance of the evidence that respondent told the Giroirs that suit had been filed. Nor did the commissioner find by clear and convincing evidence that respondent did not tell the Giroirs that he required the court costs before he would file suits.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. Louisiana State Bar Association v. Bubert, 421 So.2d 831 (La.1982). The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Id.
In regard to Specification No. 1, we find that, although respondent's procrastination and failure to communicate with Mr. Gaffney constituted conduct unbecoming to the practice of law, we cannot go so far as to hold that such inactivity was a violation of DR 6-101(A)(3). Respondent did file both suits and attempted to go to trial on many occasions. His admitted failure to obtain judgments, viewed in light of his insistence that such judgments would be uncollectable, is a matter of poor legal judgment rather than an instance of the neglect of a legal matter entrusted to him. Hence, no disciplinary action is appropriate.
However, as to Specification No. 2, we find that respondent was guilty of a violation of DR 6-101(A)(3) in permitting Mrs. Giroir's compensation claim to prescribe. Respondent defends himself by arguing that he told the Giroirs he would not file the suit until they advanced court costs. He corroborates this claim by showing that the Giroirs already owed him money from previous matters. However, because of the lack of written documentation, we are unable to say that respondent prevailed in this defense. Thus, respondent was at fault in permitting the suit to prescribe.
Nevertheless, we recognize that there are many mitigating factors in this case. Respondent is correct in his assertion that the commissioner failed to meet his burden of proof of finding by clear and convincing evidence that respondent told the Giroirs he had filed suit. Nor does the record support such a finding of fact. Thus, we find that respondent was not guilty of any dishonesty in this matter. Respondent also did not accept any fees from the clients in connection with this matter. Nor does it appear that respondent previously has been charged with unprofessional conduct. Hence, we find at most only a technical violation of DR 6-101(A)(3) under this specification and conclude that an official public reprimand is the appropriate disciplinary *728 action for respondent's conduct in this matter.

DECREE
For the reasons assigned, it is ordered that Specification No. 1 be dismissed. It is further ordered that George J. Dowd be and is hereby publicly reprimanded for his conduct in connection with Specification No. 2. Respondent is to bear all costs of these proceedings.
NOTES
[1] Respondent asserts that he did not know that the hearing "was going on." After the hearing, the bar association also sent respondent notice that he was given ten extra days in which to present a defense, but respondent did not timely reply.
[2] DR 6-101. Failing to Act Competently

(A) A lawyer shall not:
. . . .
(3) Neglect a legal matter entrusted to him.
[3] DR 1-102. Misconduct.

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.