CALOGERO, Justice.
The Louisiana State Bar Association brought this disciplinary proceeding against the respondent attorney, Louis R. Koerner, Jr., because of three alleged specifications of misconduct, all related to respondent’s activities in connection with a lawsuit he was handling for a client, one Carole Cross and Cross Company, Inc. in the United States District Court for the Middle District of Louisiana.
The thrust of the specifications was that 1) respondent’s neglect caused a dismissal with prejudice of his client’s case, and he attempted to deceive the client by false advice that the case was still pending; 2) respondent intentionally made misrepresentations to a United States District Court judge (in a certain letter and attached pleading) in an effort to deceive him. The letter and pre-trial order were deceptive and fraudulent, it is alleged; 3) he failed in certain duties relative to preparation of a pre-trial order, but most significantly, he “removed said order from the Clerk of Court and fraudulently affixed [his] signature thereto by use of photocopy devices so that it appeared as if [he] had signed the original order prepared by attorneys for the defendants.”
From the outset respondent has candidly admitted the essentials in Specification No. 1 (that he neglected his client’s case, his neglect caused dismissal of the case and that he told his client the suit was pending, when in fact, he knew it had been dismissed). He contended, however, that the deceptive advice was prompted by a desire to help get the case reinstated and that said advice accompanied his counsel that she should get another attorney. Fuller particulars relative to this matter will be found later in this opinion wherein we quote the Commissioner’s report.
On the other hand respondent has vigorously denied the allegations contained in Specifications 2 and 3.
The committee contends that all three specifications have been proven and that as a consequence respondent should be suspended from the practice of law for two years. Their counsel admitted in oral argument, however, that if Specifications 2 and 3 have not been proven, a formal reprimand would suffice as discipline for respondent’s admitted conduct as relates to Specification No. 1.
The Commissioner, Julian R. Murray, Jr., heard the matter, reviewed all exhibits, including the transcript of the proceedings before the Committee on Professional Responsibility, and made findings which almost entirely coincided with the position taken throughout these proceedings by the respondent attorney. The Commissioner found that the second and third specifications were not sustained by the evidence. And as relates to respondent’s admitted misconduct in Specification No. 1, the commissioner recommended as discipline that this Court impose a public reprimand.
We have thoroughly reviewed the evidence in this case and concluded that the commissioner’s findings are correct in all particulars.
We could hardly improve upon that report and its findings in this somewhat complex factual case. For this reason we in *635 corporate the commissioner’s report of March 15, 1984 as a part of this opinion by attaching it as an appendix.
For these reasons it is the order of this Court that respondent Louis R. Koerner, Jr. be, and he is hereby formally and publicly reprimanded for the conduct charged and proven in Specification No. 1, Committee File No. 6489-A.

Decree

RESPONDENT REPRIMANDED.

Appendix

REPORT OF THE COMMISSIONER
Pursuant to an Order of this Honorable Court dated September 1, 1983, the undersigned was appointed Commissioner in this matter to take evidence and report to the Court my findings of fact and conclusions of law. After proper notice to all parties, a hearing was held on November 3, 1983. There were present Mr. Richard A. Deas, Esq., Assistant Counsel for the Louisiana State Bar Association, and Mr. Wood Brown, III, Esq., representing petitioner; also present were Mr. Louis R. Koerner, Jr., Esq., respondent, and his counsel, Mr. Paul Arrington, Esq. The entire transcript of that hearing and the exhibits offered in evidence are returned herewith.
After considering the testimony and evidence given in this matter and the applicable statutory and jurisprudential law, I hereby make my report to this Honorable Court as required by Article 15, Section 6, paragraph D of the Articles of Incorporation of the Louisiana State Bar Association.
FINDINGS OF FACT
“The respondent, Louis R. Koerner, Jr., a member of the Louisiana State Bar Association, was charged in a Petition for Disciplinary Action, filed by the Bar Association through its Committee on Professional Responsibility, in the Supreme Court of Louisiana under Docket No. 83 B 0580, on March 16, 1983. It alleged the violation of the laws of this State relating to the professional conduct of lawyers under Specifications 1, 2 and 3 as set forth in File No. 6489-A in the Committee’s letter to Mr. Koerner of July 22, 1982; said letter and the specifications contained therein were attached to and made a part of the petition. Prior to the filing of the aforesaid petition, the Committee on Professional Responsibility held a formal hearing on November 9, 1982 and the testimony and exhibits received at that time were, pursuant to stipulation by the parties, entered into evidence at the hearing before this Commissioner on November 3, 1983.
“For the Court’s ready reference a copy of the specifications is attached to this report. While certain particular facts need to be reviewed in conjunction with the various specifications, I find the following background information to be supported by the record and appropriate for preliminary review.
“Respondent has been practicing law for over seventeen years and prior to the incidents complained of in the instant petition he had not been the subject of any professional complaints, and to the contrary, had a good reputation for professional competency and integrity. A large percentage of his practice dealt with complex anti-trust litigation and, as relates to the time period in question, he was particularly involved in an anti-trust case entitled RSE, Inc. d/b/a Harrisburg Asphalt Company, Et Al v. Pennsy Supply, Inc., Et al, Civil Action No. 77-689 in the United States District Court for the Middle District of Pennsylvania, (hereinafter “Harrisburg Asphalt”). Trial of that case was scheduled to begin on June 2, 1980, and all trial counsel had anticipated that it would be concluded within approximately forty (40) trial days or by the end of July, 1980. As the preparation for that trial began in the early spring of 1980, respondent had working for him two associates, plus two paralegals employees, a legal administrator, and a file clerk. He had secured sufficient financial credit to allow him to meet his office expenses through August of 1980 when it was anticipated that the trial in Pennsylvania would be completed. During this same time peri *636 od, while Mr. Koerner’s legal staff was still intact, the case of Cross Company, Inc. v. Sample Brothers, Inc. S.B.I., Inc., Robert Fortenberry and Graham Manufacturing Company, Inc., John Wilmsen and Elliot Spencer, Civil Action No. 77-447 (hereinafter “Cross”), pending in the United States District Court for the Middle District of Louisiana, was scheduled for a pretrial conference. Respondent represented the plaintiffs in that anti-trust action and lead counsel for the defendant was Mr. B.B. Taylor of Baton Rouge. However, because of the grave illness and ultimate death of Mr. Taylor’s wife during the spring and summer of 1980, the pre-trial conference and the preparation of the appropriate pre-trial order had to be twice continued. Respondent testified that he acquiesced in the two requested continuances because he “felt so bad” about Mr. Taylor’s plight, even though he recognized that a later setting of the pre-trial conference would be to his detriment. This was so because as the case developed in Pennsylvania it became obvious to him that it was going to consume much more than the forty days that had been estimated. In fact, allowing for interruptions during which the court handled emergency matters, the Harrisburg Asphalt case took ten months to complete. During that time period, respondent’s finances were depleted and he was required to lay off all of his staff and close his office.
“The Harrisburg Asphalt case continued sporadically through the months of October, November and December of 1980, during which period Judge Polozola was attempting to get a completed pre-trial order and hold a pre-trial conference in the Cross case. Notwithstanding numerous opportunities which were given to respondent by Judge Polozola to complete the pre-trial order without opposing counsel, respondent failed to do so. That failure ultimately resulted in the court’s dismissal of the Cross case. The facts surrounding that dismissal, and the respondent’s effort to have the case reopened, formed the basis for the three specifications sub judice and are more appropriately considered in the context of those specifications.

Specification No. 1

“This specification in essence alleges that respondent refused and neglected to file the necessary pleadings and perform the necessary professional work to protect his client’s interest, thereby causing the client’s case to be dismissed; and that further, respondent attempted to deceive his client by telling her that the case was still viable when he knew the case had been dismissed. In his post-trial memorandum, as well as at all other times, respondent concedes his negligence under Rule 6-101(A)(3), but denies that the Bar Association established the requisite intent to deceive his client as would be required to find a violation of Disciplinary Rule 1-102(A)(4). He argues that ‘... the evidence tends to establish that far from attempting to deceive his client, Mr. Koerner did everything possible, including conducting thorough research into the matter, to salvage his client's action and to protect her from possible implication.’ (Post-hearing Reply Memorandum from Respondent, p. 3) In support of his position, respondent cites case law and L.R.S. 14:10, defining criminal intent.
“I find that respondent has confused motive with intent. His own testimony at the Committee hearing indicated that he clearly intended to deceive his client as to the status of her case. Even conceding that his motivations for the deceit may have been to further what he considered to have been in the best interest of his client, that is a matter which addresses itself to the disciplinary action to be taken by the Court. (See discussion of this issue under ‘Conclusions and Recommendations’ infra.) I find that within the meaning of Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976) there is ‘clear and convincing evidence’ of the allegations in Specification No. 1 and accordingly, it is sustained.

*637
Specification No. 2

“The gist of this second specification is that respondent intentionally made misrepresentations to United States District Judge Frank J. Polozola, in an effort to deceive him by writing him a letter on January 12, 1981, which itself contained misrepresentations and referred to a pretrial order which was additionally deceptive and fraudulent. Respondent acknowledges that in retrospect he can see where the documents might have been confusing or misleading to the court, but, to the extent that they were, it was purely the result of a mistake with no intent to mislead or deceive. A resolution of the issue requires a further examination of the facts.
“The testimony of Judge Polozola and the documents introduced at the time of the Committee hearing disclosed that the court had difficulty in securing the cooperation of counsel for both sides in the Cross case. At the hearing the judge testified as follows:
I might add that I have never seen a case where the lawyers misbehaved so much as in this case, and that’s both parties, lawyers for the plaintiff and lawyers for the defendants. I think I said in the hearing that we had on March 11, 1981, that I was glad I did not practice law anymore because of the lack of courtesy that the lawyers had shown to each other, even the comments made in the record — if you’ll read that March 11, 1981 comment — I had a lot of problems with the lawyers in this case. (Transcript, Formal Investigatory Hearing, File No. 6489A, p. 108).
The docket sheets confirm respondent’s contention that there were two earlier pretrial conferences scheduled that were continued by the defense in the Cross case. The docket sheet further shows that the third reassigned date for the pre-trial conference was for August 21, 1980, and that it was continued to a fourth resetting (by Minute Entry of July 29, 1980) for October 7, 1980, with a statement that “... absolutely no further continuances shall be granted....” However, as of October 7, 1980, the parties had not prepared the proper pre-trial order under the local rules of the United States District Court for the Middle District of Louisiana and the court gave the parties an additional thirty days in which to file the proper order, and according to the testimony of Judge Polozola, he also gave them a “tongue lashing” regarding the importance of having the order submitted timely and properly.
“The record discloses that during that thirty day extension period defense counsel tried on numerous occasions in both writing and by telephone to secure the cooperation of respondent in preparing the order, but was unsuccessful. Therefore, on November 10, 1980, Judge Polozola issued a rule to show cause why the complaint should not be dismissed for failure of the plaintiff to have followed his instructions to prepare the pre-trial order. That rule was originally set for hearing on December 5, 1980, but was continued at the request of the respondent with his assurances to the court that the pre-trial order would be properly filed on or before December 29, 1980. Notwithstanding his promise to the court, respondent did not file the pre-trial order by December 29, 1980, and the court, after waiting an additional two days to see if perhaps it was in the mail, ultimately ordered that the suit be dismissed with prejudice on January 1, 1981. A judgment to that effect was entered on January 5, 1981.
“As noted in Specification No. 1, respondent admits the neglect of his responsibility to the court as outlined above and takes full responsibility for same. However, the foregoing is merely prologue to the events which follow and give rise to Specification No. 2. The defense counsel, in an effort to respond to the court’s requirement for a pre-trial order, had — after being unsuccessful in getting cooperation from respondent — sent to respondent his version of what he felt the pre-trial order would state and forwarded a copy of same to the court with a letter of explanation. Respondent, who had been tied up in the case in Pennsylvania, returned to his office in New Or *638 leans to find a copy of the pre-trial order prepared' by defense counsel as well as the notice of dismissal entered by the court.
“In an effort to have the case reopened, respondent, on January 12, 1981, sent a letter to Judge Polozola together with a copy of the pre-trial order. He explained to the court that the dereliction had been his, not his client’s. According to his letter to the court the pre-trial order which he was enclosing was “duly executed” and was accompanied by a Motion Por New Trial. The court received the January 12th letter as well as the enclosed pre-trial order, but did not receive a copy of the Motion for New Trial. Respondent sent a copy of his January 12th letter, the pre-trial order, and a copy of the Motion for New Trial to defense counsel. Defense counsel, upon receiving a copy of those documents, immediately wrote to the court and noted that changes had been made in the pre-trial order and that he, defense counsel, had not signed the copy of the pre-trial order which was ultimately sent by respondent to the court.
“Notwithstanding that he did not receive a motion for a new trial, Judge Polozola decided to treat the letter of January 12, 1981 as a motion for a new trial and a hearing on same was ultimately held on March 11, 1981. At that hearing, the court, in addition to addressing the merits of the motion for a new trial, also took up the ethical issue of whether Mr. Koerner had attempted to deceive the court in his letter of January 12, 1981 inasmuch as said letter indicated that the pre-trial order had been “duly executed” when in fact what was submitted to the court was not a pretrial order agreed to by all of the counsel, but one which had been amended by respondent and signed only by him. Mr. Koerner attempted to explain to the court that he did not intend any misrepresentation, and any confusion that did exist was purely inadvertent. Judge Polozola did not accept the explanation by Mr. Koerner as evidenced by his letter of complaint to the Bar Association on March 24, 1981 and his subsequent testimony at the Committee Hearing.
“There can be little doubt but that Judge Polozola showed the patience of Job in extending to respondent so many opportunities to file a proper and timely pre-trial order. However, it is equally apparent that the court’s patience had understandably been exhausted by time the hearing was held on March 11, 1981. As late as that date respondent was continuing to demonstrate confusion, ineptitude and neglect because not only had he failed to send the original of the motion for new trial to the court, he did not even bring a copy himself to the hearing. However, the issues in this specification is not negligence, but intent. The judge was accusing Mr. Koerner of purposely attempting to mislead the court and respondent was replying that even if his letter of January 12, 1981 was confusing, the motion itself would clearly demonstrate that there was no intent to defraud.[1]
“Respondent was attempting, in vain, to explain to the judge that if he would read the letter in context with the motion it would be clear that he had no intent to deceive, because in the body of the motion it clearly states “... it is respectfully submitted that the Court should accept the pre-trial order of plaintiff as submitted and executed by counsel for plaintiff....” (Emphasis added.) Although clearly exasperated at that point in the proceedings, Judge Polozola did make the appropriate inquiry regarding the existence of the missing Motion for New Trial. After noting that no such motion was filed in the record, the colloquy continued as follows:
*639 MR. KOERNER:
I believe I filed a motion for a new trial.
THE COURT:
Okay. Do you have a copy in your records there?
MR. KOERNER:
Not with me. I gave all of my records to Mr. Hollingsworth. [The attorney who was taking over the case on behalf of Mrs. Cross] Did you find a copy of the Motion for New Trial? [Apparently referring to Mr. Hollings-worth] I know I prepared one.
MR. HOLLINGSWORTH:
Your Honor, I received Mr. Koerner’s file and I went through it at great extent (sic) and I have not seen a Motion for New Trial.
THE COURT:
My minute entry — the minute entry that I issued on January 22, says: On January 14, 1981, the Court received a letter dated January 12, 1981 from Mr. Louis R. Koerner, Jr., counsel for plaintiff. Although the letter filed with the Court by Mr. Koerner fails to comply with the local rules of court and the Federal Rules of Civil Procedure, the Court shall treat the letter of January 12, 1981, as a motion for a new trial.
MR. KOERNER:
It is my understanding the I filed a motion for a new trial and I believe I sent copies to the defense. They’re here. They can tell you whether they received it.
THE COURT:
Do you all have copy (sic) of the Motion For New Trial, because I have no Motion For New Trial.
MR. TAYLOR:

No such thing was filed in the record anywhere.

(See Exh. C-7, Transcript Civil Action No. 77-447-B, United States District Court for the Middle District of Louisiana, March 11, 1981, pp. 7-8.) (Emphasis supplied.)
“I note with interest that the answer given by defense counsel to the inquiry of the court was a non sequitur. In response to assurances by Mr. Koerner that he had sent copies of the missing motion to defense counsel the court was specifically inquiring of defense counsel whether or not he had a copy of the motion. Rather than answer that question directly, stating that either he did or did not have a copy, Mr. Taylor avoided the issue by responding that no such pleading was “filed in the record.” I am not called upon to make any evaluation as to whether defense counsel was candid with the court in his response, and I do not do so.
“However, I do find that had he answered the court’s question directly he would have admitted that he did have a copy of the Motion for New Trial and said motion did clearly state that the pre-trial order that was submitted to the court was “... executed by counsel for plaintiff....” [2] It is doubtful that had the copy of the motion been made available to Judge Polozola as he requested that he would have found there was any intent to deceive him on the part of Mr. Koerner. At any rate, I have reviewed a copy of the motion and I conclude that there was no such intent.
“While I find that the language in the Motion For New Trial clearly established a lack of intent to deceive the court on the part of respondent, I also note that my conclusion is substantiated by other corroborative evidence. The copying of the origi *640 nal pre-trial order and the adding of the interdelineations with a different typewriter belie any intent to deceive the court. Not only are they obvious on their face, but the cover letter of January 12, 1981 specifically notes that changes were made by respondent. The review of the signature page clearly indicates that it was only signed by respondent, and the signatures of defense counsel are photocopies.
“I further note that even if one were disposed to conclude such a sloppy effort to deceive on the part of respondent, under no circumstances would it be expected that he would have sent copies of the altered documents to defense counsel. I credit as correct the testimony by respondent and Judge Polozola to the effect that the relationship between opposing counsel in the Cross case was less than friendly.[3] A large portion of the language deleted by respondent from the proposed pre-trial order submitted by defense counsel related to defense efforts to blame him for the previous failures to have timely completed the pre-trial order. Respondent had to know when he deleted that language, and changed other facts which the defense contended he had previously “admitted”, defense counsel was going to immediately contact the court to complain.
“Accordingly, I find Specification No. 2 is not sustained.

Specification No. 3

“For the most part I find Specification No. 3 to be duplicitous in that it either alleges neglect of professional responsibilities as covered in Specification No. 1, or it relates to the alleged deceptive pre-trial order referred to in Specification No. 2. The third specification does embellish on the alleged fraudulent use of the pre-trial order by contending that respondent removed it from the clerk of court and thereafter refiled it in an altered state. Apparently, Specification No. 3 was perceived by respondent to be uniquely odious because prior to the hearing before this Commissioner, he filed a motion with the Court to have the third specification stricken. That motion was opposed by the Bar Association and over the dissents of Justices Calogero and Marcus, the Court declined to strike it. However, at the hearing before me the attorneys for the committee acknowledged that they had no evidence in support of Specification No. 3, and they specifically noted that they had no evidence indicating that respondent ever removed from the possession of the clerk of court, or refiled, any pleading. Accordingly I find that to that extent, if any, Specification No. 3 avoids being duplicitous, it is nevertheless not sustained.
CONCLUSIONS AND RECOMMENDATIONS
“There remains the issue of the recommendation for disciplinary action regarding Specification No. 1 which I found to have been sustained. That specification had elements of both deceit and neglect.
“I accept as true respondent’s testimony that the only reason he failed to advise his client that her lawsuit had been dismissed was because he felt that such knowledge would be detrimental to her. He apparently had researched the issue and determined that ordinarily the courts will not penalize a litigant, to the extent of dismissing the lawsuit, for derelictions of the attorney which the litigant was neither responsible for, nor aware of. Consequently, Mr. Koerner perceived it to be in the best interest of his client to be unaware of what had transpired in her case until the motion for new trial could be heard. I credit as cor *641 rect respondent’s position that his withholding of information from his client was not to benefit himself. Both he and Mrs. Cross testified that he had advised her to seek another attorney to represent her in the matter, and in giving such advice respondent had to know that the new attorney would uncover and disclose to Mrs. Cross exactly what had taken place. While withholding of information from a client is never to be condoned, I do find that the deceit in the instant case was designed to be of very limited duration and precipitated by a laudable, albeit misguided, motive.
“On the issue of neglect I noted previously that respondent had never challenged that allegation. To his credit he had forthrightly admitted his inability to have properly handled his client’s case. He fought valiantly at the hearing on March 11, 1981 to save his client’s case from dismissal notwithstanding failure to have properly pursued it. I also credit as accurate respondent’s testimony that he was under extreme personal and professional pressure as a result of the unexpected protracted nature of the Harrisburg Asphalt case. In fact, given the extreme nature of respondent’s difficulties, and the fact that he had to actually close down the operations of his office, his inability to have completed his other professional obligations might be forgiven entirely were it not for the continued forbearance which respondent requested, and received, from Judge Polozola. The system can and does allow for the occasional “overload” which attorneys experience, but there was ample opportunity in the present case for respondent to have seen it coming and made alternate arrangements that better served the court and his client.
“Considering the totality of the circumstances, I do not feel that disbarment should be seriously considered. While suspension is a plausible alternative, I also decline to make that recommendation. I have not found any cases, nor have any been cited to me by the Bar Association, where the Court has ordered suspension in a comparable situation. In reaching this conclusion I have taken into consideration the prior good record of respondent, the fact that the instant aberration in his professional conduct was precipitated by tremendous pressure, and that his disservice to one client and one court was occasioned in large measure by his effort to properly serve another client and another court. I have also considered the fact that he was forthright in admitting his dereliction and took immediate steps to recompense the injured client for her loss.
“I must in candor also state that my position is based in part on my belief that respondent has, to a large measure, been punished by having his professional reputation damaged by the inclusion of Specification No. 3 in the petition which the Committee saw fit to bring against him. While it is true that for the most part that specification was merely duplicitous, it would be to ignore reality not to recognize that allegations that respondent removed documents from the clerk’s office and refiled them with changes carried a most sinister connotation. Those who were most likely to be interested in the allegations against respondent are the same persons who would be knowledgeable enough to realize that absent some nefarious action, attorneys are not at liberty to remove and refile any documents in the possession of the United States District Clerk. It was apparent that respondent felt accutely the sting of that allegation as evidenced by his motion to have it stricken or to at least have it not made public until the proceedings had been concluded against him. Inasmuch as the attorneys for the Bar Association admitted to me at the time of the hearing that they had no evidence to support allegations that he removed any court records, there could be no question but that respondent’s reputation as to those particular allegations has been unjustifiably damaged.
“While I do not recommend suspension I do believe that it is necessary that the Court clearly state that dereliction of professional responsibilities and deceipt of clients, even for noble motives, will not be tolerated. Accordingly, it is my recommendation that the Court issue a public reprimand to respondent for the infraction of *642 the disciplinary rules alleged in Specification No. 1.”
Respectfully submitted,
/&/ Julian R. Murray, Jr. JULIAN R. MURRAY, JR. COMMISSIONER
March 15, 1984

. The deceipt issue revolved around respondent’s statement in his letter that the attached pre-trial order was “duly executed". If it had in fact been duly executed within the meaning of the local rules of court the original would have had to have been signed by all attorneys, and since the submitted order was only signed by respondent (with the signatures of defense counsel only being photocopies) the court concluded there must have been an intentional misrepresentation.

. At the hearing before the Committee, Mr. Taylor originally denied ever having received, or even knowing anything about the existence of, the Motion For New Trial which respondent had allegedly filed. However, after having had his attention called to a letter which he wrote to Judge Polozola in which he quoted at length from the motion he then remembered its existence. "I agree with you completely. It appears to indicate that I had a copy of it. Now, I can — it comes back to me now that when Judge Polozola said that there was no motion for new trial in the record, that I was somewhat surprised. I had totally forgotten this; you have called my attention to the fact that I apparently had a copy of the motion for a new trial in my hand
(Transcript, Formal Investigatory Hearing, File No. 6489-A, p. 61) (Emphasis supplied.)

. Although Mr. Taylor denied he was appearing as "prosecutor” of Mr. Koerner at the Committee hearing, I find the tenor of his testimony, taken as a whole, indicated personal animosity toward respondent. At one point in his testimony when he was being particularly vituperative counsel for respondent questioned him as follows:
Q. Mr. Taylor, did I understand you correctly when you came here today you said you did not come here as a prosecutor?
A. That's right. But I was never happy with Mr. Koerner who kept me working for four years on this meritless case.
(Transcript, Formal Investigatory Hearing, File No. 6489-A, p. 58)