WATSON, Justice.
This is a disciplinary proceeding brought by the Louisiana State Bar Association against one of its members, Donald G. Horton.
Horton was charged with three specifications of misconduct as to client Cobb, and *829 two specifications of misconduct as to client Transue. Both matters involve allegations of neglect and misrepresentation.
In Cobb, specification No. 1 alleged that respondent was retained to represent Elnora Cobb in a personal injury suit and thereafter allowed the suit to be dismissed with prejudice, a violation of Disciplinary Rules 6-101(A)(3),[1] 1-102(A)(5) and (6),[2] and 7-101(A)(2) and (3).[3] Specification No. 2 alleged that respondent falsely informed the client of the status of the lawsuit in violation of Disciplinary Rule 1-102(A)(4), (5) and (6).[4] Specification No. 3 alleged that respondent made false and misleading statements to the Association in response to the complaint, a violation of Disciplinary Rules 6-102(A)[5] and 1-102(A)(4), (5) and (6).[6]
In Transue, specification No. 1 concerns respondent’s retainer by Mrs. Transue to handle the sale of a house and subsequent foreclosure on the note secured by the house. Respondent allegedly neglected the matter and misrepresented the status of the proceedings in violation of Disciplinary Rules 1-102(A)(4) and (6),[7] and 6-101(A)(3).[8] Specification No. 2 alleges that respondent made false and misleading statements to the Association in response to the complaint in violation of Disciplinary Rule 1-102(A)(4), (5) and (6).[9]
The Committee on Professional Responsibility of the Louisiana State Bar Association held a formal investigative hearing on January 27, 1986, at which respondent appeared in his own behalf. A petition for disciplinary action was filed by the Committee on May 14, 1986. Horton answered the petition, denying its allegations. After a Commissioner was appointed, a hearing was held on September 23, 1986. Respondent appeared at the hearing representing himself.
In the Cobb matter, the Commissioner found the Committee proved that Horton failed to carry out a contract of employment, causing prejudice to his client when the suit was dismissed. The Commissioner also found the Committee proved Horton falsely informed and misrepresented the status of her lawsuit to Ms. Cobb.[10] The Commissioner did not find that Horton misrepresented the matter in his response to the Committee’s complaint.[11] The Committee opposes the Commissioner’s finding concerning the response to the complaint but concurs in the other findings.
As to Transue, the Commissioner found that the Committee proved neglect of the matter but no misrepresentation, dishonesty, or other related conduct.[12] The Com *830 missioner also found that Horton had not made false and misleading statements to the Committee in his response to its complaint.[13] The Committee opposes the Commissioner’s findings of no misrepresentation or related conduct but concurs in the other findings.
The Bar Association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La., 1984).

Cobb

Ms. Cobb sustained personal injuries on July 13, 1978, while entering a Trailways bus in Coushatta, Louisiana. Respondent practices law in Coushatta and was both friend and attorney to Ms. Cobb’s sister and brother-in-law. Shortly after Ms. Cobb retained respondent to handle her case, she moved to Shreveport. Suit was filed in July of 1979. On January 30, 1980, defendant propounded written interrogatories to Ms. Cobb through her attorney. They were not answered and defense counsel filed a motion to dismiss the lawsuit in February, 1981, for failing to answer interrogatories and refusing to cooperate in the taking of Ms. Cobb’s deposition. The lawsuit was dismissed with prejudice in April, 1981.
Ms. Cobb testified to repeated unsuccessful attempts either to contact attorney Horton by telephone or to make appointments with him between 1979 and 1984. She introduced her long distance telephone bills to corroborate her testimony. She admitted that respondent contacted her shortly after the accident and conveyed a settlement offer of $1,000, which she refused. She testified that she was never asked by respondent to answer interrogatories or appear at a deposition nor did she ever receive any written correspondence from him regarding the status of her lawsuit. When she did make contact with him in 1983, he was still talking about trial of the case and advocating the $1,000 settlement. She did not know that the lawsuit had been dismissed until another attorney obtained the record of her lawsuit from the courthouse.
In defense, respondent testified that his contact with Ms. Cobb was through her sister and brother-in-law. He repeatedly asked them to bring Ms. Cobb to his office. Even though she frequently visited Cous-hatta, she never came to his office after the initial visit. He said he notified her relatives that interrogatories had been served, which she needed to come in and answer.
Reports by Ms. Cobb’s orthopaedist reveal no permanent injury or disability. Her general doctor released her from treatment on December 9, 1978. Because she was not seriously injured, she had minimal medical records and expenses. Horton considered the $1,000 settlement offer to be reasonable. Ms. Cobb was not cooperative and even became hostile when he advised her to settle the case. According to Horton, he told Ms. Cobb the case was dismissed, but “she just refused to accept the fact.”[14] Respondent’s testimony is conflicting as to whether he mailed Ms. Cobb a copy of the motion to dismiss the lawsuit. She denies receiving any correspondence, and respondent has no record to support his testimony.
The Commissioner found Horton’s testimony unconvincing and uncorroborated. Horton did not call Ms. Cobb’s relatives as witnesses or produce any documentation. In fact, he admitted “regretfully” that he did not document any of his alleged attempts to contact Ms. Cobb. He did not inform her in writing of the filing of interrogatories, the settlement offer, or the dismissal of the lawsuit. The evidence is clear and convincing that Horton neglected Ms. Cobb’s suit, resulting in dismissal of her lawsuit with prejudice.
The evidence is also clear and convincing that respondent engaged in conduct involving misrepresentation in violation of DR 1-102(A)(4). Ms. Cobb said that she was never informed of the filing of interrogatories or the dismissal of her lawsuit. As *831 late as 1983, Horton allegedly offered to settle the case for $1,000. Respondent testified that he informed Ms. Cobb of the dismissal of the lawsuit but she refused to accept the fact. Unfortunately, his testimony is uncorroborated and undocumented. At the least, respondent misrepresented the status of the lawsuit to his client. The Committee proved a violation of DR 1-102(A)(4).
Respondent wrote a letter to the Committee in response to the complaint filed by Ms. Cobb. In Specification No. 3 the Committee contends that statements in that letter are false and misleading. In particular, respondent answered Ms. Cobb’s complaint replying that he was unable to answer interrogatories because of “inability to contact my client”, and thus he “allowed” the suit to be dismissed. The Committee contends that the response is false and misleading and made for the purpose of exonerating respondent from or limiting his liability for malpractice.
The Commissioner correctly found that the Committee had not established a violation of DR 1-102(A)(4), (5) and (6). Horton’s answers were made in response to a complaint; they were not made to exonerate respondent from or limit his liability to his client. It has not been established that respondent intended to deceive the Committee. Respondent Horton is not guilty of the misconduct set forth in Specification No. 3.

Transue

Ms. Transue was a friend of respondent. After handling the succession of her mother, respondent was retained by Ms. Transue to pass the act of sale on a house she inherited in that succession. The sale to Mary Ann Paul (later Mary Ann Paul Wiggins) was for $20,500: $2,000 was paid in cash and the balance was financed by Ms. Transue and secured by a mortgage on the house. The mortgage note bore interest at fourteen percent. After the act of sale in February of 1981, there were serious difficulties in collecting on the note. Ms. Transue, who lived in Alabama, retained respondent to help her collect the note. After considerable unrewarding communications with the buyer, Horton filed a foreclosure suit on December 21, 1983. In January, 1984, the buyer reconvened alleging that the interest rate was usurious, resulting in forfeiture of all interest. Between 1983 and 1986, the foreclosure suit was not brought to trial nor was a settlement successfully negotiated. The case was finally brought to trial in January of 1986 (about six weeks after a formal complaint was filed by the Committee). The trial court rejected the usury defense, but client Transue did not go forward with the foreclosure. Respondent settled with Ms. Transue on September 17, 1986, by purchasing the mortgage note for $24,000 and has paid $12,000 on the note.
Ms. Transue testified that between 1981 and 1985 she attempted on numerous occasions to determine from respondent the status of her case by telephone, by letter, and eventually through the intervention of other counsel, all without success. She did not become aware of the reconventional demand revealing a potential usury problem until her Alabama attorney contacted Horton in December of 1984. After this contact, respondent told Ms. Transue’s Alabama attorney that he had set the case for trial. The case was not tried until a year later.
Horton testified that he was never consulted by Ms. Transue or anyone else about the interest rate in the mortgage note and gave no opinion about the rate. The only advice he gave Ms. Transue was not to sell the house due to the buyer’s financially unstable situation. Horton wrote a series of letters to the buyer regarding bounced checks and late payments. When his client asked him to file the foreclosure suit, she told him that “she did not want the house back”.[15] Since economic conditions had changed in the parish, it was difficult to find renters and the property had deteriorated. Thus, Horton continued to negotiate with the original buyer, delaying a trial to prevent foreclosure and return of *832 the house to Ms. Transue at a sheriffs sale.
After receiving correspondence from Ms. Transue’s Alabama attorney, Horton turned over all pleadings and correspondence in the matter and revealed the potential usury prohlem to his client. The matter was set for trial in 1984 but was continued at the request of defendant. Respondent contends that he attempted to set a trial date in the matter prior to the January, 1986, date, but he did not follow up on it. He has nothing to verify this contention since “our method in Red River Parish is walking across to the courthouse and asking that it be set.” [16]
The evidence is not clear and convincing that respondent was guilty of neglect of a legal matter entrusted to him. Moreover, the Committee did not prove that respondent affirmatively engaged in 'conduct which was dishonest, deceitful, or otherwise violated the provisions of DR 1-102(A)(4) and (6). While we agree that respondent did not promptly and adequately respond to his client’s inquiries about the status of the case and, in particular, the usury defense, this procrastination and failure to communicate is “unbecoming conduct” at most, a matter of poor judgment, rather than neglect of a legal matter. See Louisiana State Bar Association v. Dowd, supra.
Respondent continued to negotiate with the buyer in an attempt to collect on the note rather than foreclose on the house, a decision which he perceived to be his client’s wish and in her best interest. Respondent eventually agreed to pay all Ms. Transue’s expenses in addition to purchasing the mortgage note. Ms. Transue is satisfied with this arrangement and has not suffered a financial loss. No violation of the disciplinary rules has been proven.
CONCLUSION
The purpose of disciplinary proceedings-is to protect the courts and the public, while deterring future misconduct. Louisiana State Bar Association v. Cryer, 441 So.2d 734 (La., 1983); Louisiana State Bar Association v. Mundy, 423 So.2d 1126 (La., 1982). The discipline to be imposed turns upon the seriousness of the offense and the facts of each case, considered with all aggravating and mitigating circumstances. Louisiana State Bar Association v. McGovern, 481 So.2d 574 (La., 1986); Louisiana State Bar Association v. Dowd, supra; Louisiana State Bar Association v. Bubert, 421 So.2d 831 (La., 1982).
The Commissioner recommended a suspension of six months from the practice of law. The Committee opposes that recommendation and argues that Horton should be suspended from the practice of law until restitution is completed in both matters and for a specific period of time up to one year after proof that restitution was made.
Since the Committee has not proven the specifications of misconduct in the Transue matter, disciplinary action is not warranted. Louisiana State Bar Association v. Dowd, supra.
In the Cobb matter, the Committee has proven a violation of DR 6-101(A)(3) and 1-102(A)(4). Respondent has expressed a willingness to compensate Ms. Cobb for her injuries. No restitution has yet been made, because Ms. Cobb has refused to accept the $1,000 settlement Horton considered reasonable. Since Horton has satisfactorily resolved his differences with Ms. Transue, there is no reason to believe he cannot reach an amicable settlement with Ms. Cobb.
Respondent has been practicing law over sixteen years in Coushatta, Louisiana, a small town in a parish of approximately 10,000 residents. He contends that, with the exception of the District Attorney, who has a limited civil practice, there is no other law firm in Red River Parish. Thus, his loyal clients would suffer if he were suspended. Prior to these complaints, he had not been the subject of any professional grievances. In extenuation, Horton, a leader in Coushatta, pleads his extensive contributions to the legal profession, his family, and his community.
The Committee relies upon Louisiana State Bar Association v. McGovern, su *833 pra, and Louisiana State Bar Association v. Lyons, 491 So.2d 369 (La.1986) in recommending suspension with readmission conditioned upon restitution. In McGovern, besides neglecting two legal matters, respondent charged an excessive fee, failed to return an unearned fee, and refused to turn over documents to his client. In Lyons, respondent, who had been the subject of prior complaints and reprimands, seriously neglected three legal matters and lied to at least two of his clients.
Respondent cites Louisiana State Bar Association v. Koerner, 457 So.2d 633 (La., 1984) and Louisiana State Bar Association v. Dowd, supra, in support of a reprimand. In Koerner, respondent neglected to file necessary pleadings and perform necessary work, causing his client’s case to be dismissed. Because of Koerner’s prior good record and the Commissioner’s belief that he had been punished in large measure by the public allegations of dishonesty and deceit, the Commissioner’s recommendation of a public reprimand was accepted. In Dowd, neglecting a legal matter by allowing a compensation claim to prescribe before filing suit also warranted a public reprimand.
Absent prior misconduct, neglect of a legal matter warrants a reprimand. Louisiana State Bar Association v. Perez, 471 So.2d 685 (La., 1985).
IT IS ORDERED that Donald G. Horton be and he is hereby publicly reprimanded for violation of the Code of Professional Responsibility by neglect and misrepresentation in connection with the claim of Elnora Cobb.
All costs of these proceedings are taxed against respondent Horton.
PUBLIC REPRIMAND ORDERED.
DENNIS, J., concurs in part and dissents in part for the reasons assigned by LEMMON, J.
LEMMON, J., dissents in part and assigns reasons.

. Rule 6-101(A)(3) of the Code of Professional Responsibility provides:
“(A) A lawyer shall not:
******
"(3) Neglect a legal matter entrusted to him.”

. Rule 1-102(A)(5) and (6) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not:
******
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law.”

. Rule 7 — 101(A)(2) and (3) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not intentionally: ******
"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B). * * * ”

. Rule 1 — 102(A)(4) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not:
******
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. * * [4] ”
For DR 1 — 102(A)(5) and (6), see note 2.

. Rule 6-102(A) of the Code of Professional Responsibility provides:
"(A) A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.”

. See notes 2 and 4.

. Id.

. See note 1.

. See notes 2 and 4.

. Specifications Number 1 and 2, Cobb matter.

. Specification Number 3, Cobb matter.

. Specification Number 1, Transue matter.

. Specification Number 2, Transue matter.

. Tr., p. 43, Formal Investigatory Hearing, Elnora Cobb matter.

. Tr., p. 31, Formal Investigatory Hearing, the Transue matter.

. Id., p. 38.