DISCIPLINARY PROCEEDINGS
CALOGERO, Chief Justice.
Attorney Joseph F. Roy was charged with four specifications of professional misconduct and four corresponding charges of refusal to cooperate in the investigation of the Committee of Professional Responsibility of the Louisiana State Bar Association.[1] The latter four charges as well as Specification No. 1 deserve discussion in this opinion.[2]

Specification No. 1

In this specification, it is alleged that respondent converted client funds to *457 his personal use and refused and neglected to provide an accounting to the client, Dr. A. Kennison Roy, III, in violation of DR 9-102(B)(3) and (4) and 1-102(A)(1), (4), (5) and (6) of the Code of Professional Responsibility.[3] Respondent is alleged to have improperly converted to his own use $3,200.00 in checks forwarded to him by Dr. Roy for the specific purpose of being transmitted to the Tulane Education Fund for payment of an outstanding debt of Dr. Roy’s.
Dr. A. Kennison Roy, III, and respondent, Joseph Roy, are first cousins. Dr. Roy graduated from Tulane Medical School in 1972. During the course of his education, he borrowed money from the Tulane Education Fund (TEF). He worked at Methodist Hospital in New Orleans until 1975, when he moved to Idaho to continue practicing medicine. After undergoing rehabilitation for alcoholism, Dr. Roy moved back to Louisiana to resume his medical practice in St. Bernard Parish in 1982. He had never satisfied his debt to TEF. However, in late 1982, Dr. Roy reached an agreement with David Duggins, an attorney representing TEF, that he would pay $150.00 per month on the debt.
Upon returning to Louisiana, Dr. Roy also reestablished a relationship with respondent, who subsequently handled for him matters involving the Internal Revenue Service, a prior bankruptcy, a medical license problem and a divorce. Dr. Roy testified at the Commissioner’s hearing that these services were performed “gratis”, that he had never been billed by respondent for these legal services, and that he, Dr. Roy, would in turn perform medical services gratis for respondent. Dr. Roy also testified that while discussing his TEF debt and the payment arrangement Dr. Roy had worked out with TEF’s lawyer, respondent suggested that the checks be run through respondent’s escrow account. The contrary testimony of respondent, on the other hand, was that he and Dr. Roy had a verbal agreement that Dr. Roy was to pay respondent a small amount each month for substantial past and ongoing legal services.
Entered into evidence at the Committee hearing was a compilation of checks drawn by Dr. Roy and payable to respondent. The first two were marked “Tulane” in the lower left hand corner and were made out in April, 1983 for $300.00 and $150.00, respectively. There were also a series of fifteen checks for $150.00, each dated about once a month between May, 1983 and July, 1984. These checks did not bear a corresponding “Tulane” notation. Dr. Roy testified nonetheless that under their agreement, all of these checks were for transmission to his creditor, TEF. Respondent testified that only the first two checks, which were marked “Tulane,” plus $150.00 in cash (a total of $600.00) were sent to him for TEF, and that the later, undesignated $150.00 checks were in payment of legal services. TEF records show that $600.00 (one payment of $450.00 and one of $150) was transmitted by respondent to TEF and credited to Dr. Roy’s account. Disciplinary Counsel argues that even these funds ($600.00) were not turned over promptly, as should have been the case. [The $600.00 was transmitted to TEF in October, 1983, a little more than six months after receipt by respondent.]
There were also four $75.00 checks mailed by Dr. Roy to respondent between September and December, 1984, which respondent admits were intended for TEF. Respondent claims that he kept this money (a total of $300.00) because of an agreement he had with David Duggins, the attorney for TEF. Respondent testified that he had performed collection work for Duggins and that Duggins agreed to respondent’s keeping these checks as an offset for the fees owed respondent by Duggins. (Presumably, under this arrangement, Duggins was to account to TEF for these payments, rather than expend the same money in payment to respondent.) Duggins testified *458 that he and respondent did, have a fee sharing arrangement as to collection of debts for another client of Duggins, but that there was no agreement to offset Duggins’ obligation to respondent for fees against respondent’s obligation regarding Dr. Roy’s TEF debt.
As to whether respondent converted the fifteen $150.00 checks that Dr. Roy claims were intended for TEF, we are faced with a conflict in the testimony of respondent and his cousin concerning the reason for transmission of these funds. Disciplinary Counsel and respondent present evidence and argument to bolster their respective contentions in this regard. Disciplinary Counsel points out that Dr. Roy had an agreement with TEF to pay off the debt at $150.00 per month, and that these checks were in that sum and were each dated about a month apart. Additionally, it is undisputed that the first two checks were marked “Tulane” and were intended for TEF, and that this money was in fact transmitted by respondent to TEF. Disciplinary Counsel contends that simply because the subsequent monthly checks were not marked “Tulane,” there was no reason to believe that these checks were not for the same purpose. He asserts additionally that there were no bills, financial records, or hourly records of any kind indicating a debt owed by Dr. Roy to respondent for legal fees.
On the other hand, respondent points out that Dr. Roy received a letter dated January 23, 1984 from the Tulane Student Loan Office, complaining that he was not making his scheduled payments. Dr. Roy did not call or write to respondent at that time to complain about any asserted diversion of the nine $150.00 checks that he had sent to respondent before that time, and which had obviously not been transmitted to TEF. Additionally, Tulane filed suit against Dr. Roy on February 21, 1984. Tulane took a default judgment, and on July 5, 1984 filed a Judgment Debtor Rule. Respondent points out that Dr. Roy had sent six more of the fifteen $150.00 monthly checks between receiving the February 21, 1984 letter from Tulane and being served with the Judgment Debtor Rule in July 1984, yet never complained about respondent’s mishandling of those checks, just as was the case regarding the previous nine checks. Respondent argues that if Dr. Roy had indeed intended the checks for his TEF debt, then two letters, a lawsuit and a default judgment would have put him on notice that respondent was mishandling his money and should have prompted some complaint from him. Finally, respondent produced evidence that Dr. Roy had on August 3, 1984 executed an “Affidavit of Monthly Business Expenses and Budget,” in which one of the entries was “Accounting and Legal $150.00.” Dr. Roy responded by stating that he pays an accountant $75.00 per month and that he did not recall the reason for the reference to “legal.”
The Commissioner found that although there may have been a misunderstanding between attorney and client as to the purpose of these funds, there was not enough evidence to prove that respondent’s receipt and retention of the fifteen $150.00 checks constituted a conversion of client’s funds. We agree. In disciplinary proceedings, the bar association has the burden of persuading this Court, as the trier of fact, that the lawyer has violated a disciplinary rule by clear and convincing evidence. LSBA v. McGovern, 481 So.2d 574 (La.1986); LSBA v. Edwins, 329 So.2d 437 (La.1976). There is no clear and convincing evidence that the purpose of the series of fifteen $150.00 checks was for transmission to Dr. Roy’s creditor, TEF. Therefore, it has not been proven that respondent mishandled or converted these checks.
Regarding the four $75.00 checks which respondent admitted were intended for TEF, we are faced with a conflict in the testimony of respondent and attorney David Duggins as to whether or not they had an agreement for respondent to keep those checks to offset legal fees owed to respondent by Duggins. We find Duggins’ testimony that he did not agree to respondent’s keeping those checks the more credible. We are therefore satisfied that respondent received $300.00 from Dr. Roy and retained that $300.00, which had been sent to him for transmission to TEF. We *459 find it somewhat mitigating, however, that Duggins, TEF’s attorney and the person to whom the checks were to be sent, had an independent ongoing business relationship with respondent. We also find as a substantial mitigating factor that any such violations by respondent were probably unintentional. Disciplinary Counsel in brief concedes that “The evidence in this case, particularly the disarray in the lawyer’s office, leads to the conclusion that it is not clearly and convincingly established that the defalcations were intentional.”

Specification Nos. 2, 4, 6 & 9

In these specifications, respondent is charged with failure to cooperate with the Committee by not responding timely to four complaints which were forwarded to him by the Committee, in violation of DR 1-102(A)(5). These specifications also allege that the Committee, after several attempts, was unable to serve subpoenas on respondent at his office address.
As stated by the Commissioner, the evidence supports the claims in these specifications. Respondent himself admits that he was remiss in answering the complaints lodged against him. We therefore find respondent guilty of failure to cooperate with the Committee.[4]
DISCIPLINE
The discipline to be imposed turns-upon the seriousness of the offense and the facts of each case, considered with all aggravating and mitigating circumstances. Louisiana State Bar Association v. Horton, 504 So.2d 828, 832 (La.1987); Louisiana State Bar Association v. Dowd, 445 So.2d 723, 727 (La.1984).
Respondent has been found to have converted $300.00 (although probably unintentionally) and to have violated DR 1-102(A)(5) in failing to cooperate with the Committee. While conversion of a client’s funds is normally a serious offense, we find it here relatively minor because of the reasons stated earlier in this opinion.
There are also several mitigating factors in this case which are deserving of consideration. Respondent does not have a prior disciplinary record, and although respondent maintains that he was innocent regarding Dr. Roy’s charge that he converted funds, respondent’s wealthy father made what respondent refers to as a “nuisance” payment to Dr. Roy of $3224.00 (representing the $2600 Dr. Roy claims should have gone to TEF plus $624.00 interest) prior to the Committee hearing on the matter. Additionally, as noted earlier, even Disciplinary Counsel admits that any violations by respondent were probably not intentional. Finally, six judges testified to respondent’s good character.
The Commissioner’s recommendation (a public reprimand and payment of costs) coincides with our view regarding adequate discipline in this case.
DECREE
For the reasons assigned, it is ordered that Joseph F. Roy be publicly reprimanded. Respondent is to bear all costs of this proceeding.
LEMMON, J., recused.

. Under new Louisiana Supreme Court Rule XIX, Section 2(A), the Disciplinary Board has replaced the Committee on Professional Responsibility, effective April 1, 1990. These charges were originally brought by the Committee, which no longer exists. The Disciplinary Board, through Disciplinary Counsel, has been substituted for the Committee in these proceedings.

. The other three substantive charges, as to which we find either no ethical violations or, in one instance, such a minor violation as does not warrant discipline beyond that imposed herein, are discussed in an unpublished appendix to this opinion.

. The Rules of Professional Conduct in Article XVI of the Articles of Incorporation of the Louisiana State Bar Association have replaced the Code of Professional Responsibility, effective January 1, 1987. However, because the conduct which is the subject of these proceedings occurred before January 1, 1987, the Code of Professional Responsibility is applicable.

. The mitigating circumstances (urged by respondent and found by the Commissioner), insofar as they relate to failing to cooperate with the Committee, are not compelling. Respondent contends that during the period of time in which he received notice of these charges, his mother and maternal grandmother both died after lengthy illnesses. He had accepted a position as attorney for the Clerk of Court, Twenty-Fourth Judicial District, which involved spending a great deal of time at the courthouse and away from his office. Also, he was evicted from his office in the Summer of 1986. His files were in disarray and he had no office space for a period of two or three months.