529 So.2d 1 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
Charles C. HAYLING III.
No. 87-B-0900.
Supreme Court of Louisiana.
May 23, 1988.
Thomas O. Collins, Jr., Cheri A. Cotogno, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, for applicant.
Charles Hayling, Baton Rouge, for respondent.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Charles C. Hayling III, a member of said association. Prior to the commencement of this proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the proceedings which involved six specifications of misconduct, was sent to respondent by certified and regular mail dated February 20, 1987.
The committee held a formal investigative hearing on the six specifications on March 14, 1987, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was not present nor was he represented by counsel at this hearing.[1] Based on the evidence adduced at the hearing, the committee was of the unanimous opinion that respondent had violated laws of the state relating to the professional conduct of lawyers and the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that respondent was guilty of the misconduct described in the specifications.
On April 21, 1987, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, then appointed Mr. Cyrus J. Greco as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
A hearing before the commissioner was held on October 1, 1987. Neither respondent *2 nor his attorney was present.[2] The committee introduced in evidence the entire record of the earlier investigative hearing, whereupon the committee rested its case. The commissioner filed with this court his written report on October 19, 1987, wherein he stated his findings of fact and conclusions of law and recommended that respondent be disbarred from the practice of law. The committee concurred with the commissioner's findings including the recommendation that respondent be disbarred.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984). The following allegations of misconduct have been made against respondent.[3]
The first specification of misconduct concerns respondent's handling of settlement funds belonging to one of his clients, Ms. Pearley Mealey. The specification accuses respondent of neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3),[4] of failing to maintain complete records of client's funds and of failing to render appropriate accounts to his client regarding those funds in violation of DR 9-102(B)(3),[5] and of commingling and converting his client's funds in violation of DR 1-102[6] and 9-102(A) and (B).[7]
The witnesses testifying at the investigative hearing regarding this specification were Ms. Mealey, Mr. Ralph Brewer and Ms. Barbara Ann Bergeron, an employee of State Farm Insurance Company claims department. According to testimony of these witnesses, Ms. Mealey hired respondent to represent her in a personal injury claim that arose out of an automobile accident. Respondent agreed to represent her. He went to the office of the adjuster, Ms. Bergeron, and settled Ms. Mealey's case for $5,000. Respondent received a draft *3 dated July 12, 1985 for the amount payable to himself and Ms. Mealey. Ms. Mealey was supposed to get $3,000 out of that $5,000, leaving a fee of $2,000 for respondent. Respondent had Ms. Mealey endorse the draft. According to a copy of the back of the draft, it was negotiated (cashed) at Ancona's Stop & Save. One of the endorsements stamped on the back of the draft is dated July 22, 1985, so the draft was cashed by respondent in July of 1985. Ms. Mealey tried to contact respondent to get her money on more than one occasion but had trouble reaching him. When she finally did reach him, respondent told her to come to his office at a certain date and time. When Ms. Mealey came to respondent's office at that time, respondent was not there and left a message that he had sprained or broken his ankle. Ms. Mealey then wrote to the Committee on Professional Responsibility and retained an attorney, Mr. Brewer, who agreed to work pro bono for Ms. Mealey to recover the money from respondent. After numerous contacts between Mr. Brewer and respondent, respondent finally paid Ms. Mealey $3,015.34 on November 19, 1985, some four months after respondent had cashed the draft.[8]
The commissioner found that the committee had proven its allegations in Specification No. 1. This court has stated that when the Bar Association proves that an attorney failed to deposit his client's funds in an identifiable bank account separate from the attorney's own funds in violation of DR 9-102(A), the burden is on the attorney to show that there was no commingling or conversion of the client's funds. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). Here, the committee proved and respondent admitted in his answer that he did not deposit Ms. Mealey's funds in a separate account. Thus, the burden was on respondent to show that there was no commingling or conversion of the funds. Respondent offered no evidence and only claimed in his answer that his wife took the funds. This unsubstantiated claim is not enough for respondent to show that there was no commingling or conversion of Ms. Mealey's funds. Therefore, we agree with the commissioner that respondent commingled and converted his client's funds in violation of DR 9-102(A) and (B). We also agree with the commissioner that respondent failed to maintain complete records of his client's funds and failed to render appropriate accounts to his client regarding them in violation of DR 9-102(B)(3). We agree that respondent violated DR 6-101(A)(3) since he neglected to timely disburse the funds that were entrusted to him by Ms. Mealey. We also agree that respondent violated DR 1-102.
The second specification of misconduct concerns respondent's alleged failure to pay a chiropractor's fee after guaranteeing the fee and withholding an amount to cover the fee from settlement funds. This specification alleges that respondent neglected a legal matter entrusted to him in violation of DR 1-102[9] and DR 6-101(A)(3)[10] and that respondent failed to maintain complete records of client's funds and failed to render appropriate accounts to his client regarding the funds in violation of DR 9-102(B)(3).[11] The specification further alleges that respondent commingled and converted the funds in violation of DR 1-102[12] and 9-102(A) and (B).[13] The only witnesses to testify at the investigative hearing about *4 this specification were Mr. Donnie Rogers and Dr. Thomas C. Plantz.
Mr. Donnie Rogers testified that he hired respondent to represent him in an insurance claim. He stated that his case was settled for about $5,000 and that he received $2,500 from the settlement. He said that he authorized respondent to withhold funds to pay a proctologist, two back specialists and two other doctors. He stated that $500 was withheld to pay Dr. Plantz, the chiropractor. Mr. Rogers testified that about one year after the settlement, he found out from Dr. Plantz that the bill had not been paid and he told Dr. Plantz that respondent was supposed to pay the bill. Mr. Rogers then attempted to contact respondent and when he finally was able to do so, respondent stated that he was going to take care of the bill. Mr. Rogers further testified that respondent gave him a sheet of paper that showed the settlement amount and the various amounts withheld to pay the doctors including the $500 due Dr. Plantz. Dr. Plantz testified that Mr. Roger's case was settled in September of 1985 and that respondent had guaranteed to pay his fee. He stated that his fee was $550. Dr. Plantz testified that the last time he talked to respondent, respondent said that he was going to forward the money. Dr. Plantz stated that the money was never forwarded.[14]
The commissioner found that the committee had proven its case on Specification No. 2. We agree with the commissioner's finding that respondent violated DR 6-101(A)(3). The paying of Dr. Plantz' bill was a legal matter that respondent neglected. However, we disagree that there was sufficient evidence to show commingling and conversion. Unlike the evidence in Specifications Nos. 1 and 3, there is no evidence here as to what happened to the money that respondent withheld from the settlement. There is no testimony or copy of a settlement draft that shows that respondent failed to deposit that draft in a separate account. The evidence only shows that respondent withheld money to pay a doctor's bill that he never paid. That evidence by itself is insufficient under our holding in Louisiana State Bar Association v. Williams, supra, to shift the burden to respondent to show that there was no commingling or conversion of his client's funds. Therefore, we do not find that respondent is guilty of commingling or conversion in violation of DR 9-102(A) and (B). We also disagree with the finding that respondent failed to maintain complete records or render appropriate accounts to his client in violation of DR 9-102(B)(3). Mr. Rogers testified that respondent gave him a sheet of paper that showed the settlement amount and the various amounts withheld from that settlement and a breakdown of the purposes of those withholdings. We do find, however, that respondent violated DR 1-102.
The third specification of misconduct concerns respondent's handling of Erma Wheeler's settlement funds. This specification accuses respondent of neglecting a legal matter entrusted to him in violation of DR 1-102[15] and DR 6-101(A)(3),[16] of failing to maintain complete records of his client's funds and of failing to render appropriate accounts to his client regarding the funds in violation of DR 9-102(B)(3)[17] and of commingling and converting the funds in violation of DR 9-102(A) and (B).[18] The only witnesses to testify about this specification were James M. Field and Erma Wheeler. Their testimony indicates that Erma Wheeler hired respondent to handle a personal injury claim against Winn Dixie. Respondent settled the case *5 and obtained a draft from Winn Dixie for $5,000 that was dated March 29, 1986 and was payable to both Erma Wheeler and respondent. The draft was then endorsed and cashed at Ancona's Stop & Save. The endorsements on the back of the copy of this draft were dated March 26, 1986. Ms. Wheeler testified that she believed her share of the settlement was all but seven percent. At the time of the settlement, Ms. Wheeler was told by respondent that she would get her money in three or four days. After a few days went by with Ms. Wheeler hearing nothing from respondent, she tried to contact him by going over to his office several times but was never able to get in contact with respondent. She then retained an attorney, James M. Field, to help get her money. She also complained to the Bar Association. When respondent found out that he had been reported to the Bar Association, he contacted Ms. Wheeler and offered her $3,000 if she would drop her complaint. Ms. Wheeler refused and at the time of the investigative hearing she had still not received her money. However, during oral argument before this court, the committee stated that it had received a letter from Mr. Field that stated that Ms. Wheeler had received the money from respondent.[19]
The commissioner found that the committee had proven the allegations in Specification No. 3. We agree that respondent is guilty of commingling and conversion in violation of DR 9-102(A) and (B). The committee proved that respondent did not deposit Ms. Wheeler's funds in a separate account and respondent submitted no evidence other than an unsubstantiated claim as to what happened to those funds. Respondent also violated DR 9-102(B)(3) since he failed to maintain records or render appropriate accounts to Ms. Wheeler concerning those funds. We also agree that respondent neglected a legal matter entrusted to him in violation of DR 6-102(A)(3). Respondent also violated DR 1-102.
Specification No. 4 alleges that respondent was hired by Mr. John Taylor and was paid $150 to handle a collection matter and then respondent neglected to take any action in violation of DR 6-101(A)(3).[20] The specification also alleges that respondent failed to carry out a contract of employment and prejudiced his client's interest in violation of DR 7-101(A)(2) and (3).[21]
The only witness to testify about this specification was Mr. John Taylor. He testified that he hired respondent to collect three bad checks in the amounts of $3,700, $800 and $500. Mr. Taylor testified that he paid $150 to respondent for this work. When Mr. Taylor contacted respondent about a year later, respondent told him that he should file the papers that respondent had prepared. Respondent also lost the $800 and $500 checks that had been given to him. Mr. Taylor testified that respondent's failure to work on his case contributed to his business' failure.[22]
The commissioner found that the allegations in this specification were proven by the committee. We agree that respondent, by never filing Mr. Taylor's suit, neglected a legal matter entrusted to him in violation of DR 6-101(A)(3) and that he failed to carry out a contract of employment in violation of DR 7-101(A)(2). We also agree that by losing two of the three checks, respondent prejudiced Mr. Taylor during *6 the course of his professional relationship with him in violation of DR 7-101(A)(3).
It is alleged in Specification No. 5 that respondent, after being hired to complete an adoption case, neglected to perform any work on that case in violation of DR 6-101(A)(3)[23] and DR 7-102(A)(2) and (3).[24]
The only witness to testify about this specification was Ida Mae Williams Young. She testified that she hired respondent in late 1985 to handle an adoption for her. She stated that she paid him $260 but the receipt that respondent gave her indicates that she gave him only $210. When the work was completed, she was going to pay respondent an additional $200. Ms. Young testified that respondent did write up some papers that she and the natural mother later came to respondent's office to sign. Respondent told her at that time that it would be from six months to a year before the adoption would be completed. She stated that she then tried to contact respondent by phone and letter but that she was never able to get in touch with him after that time. The adoption papers still have not been filed.[25]
The commissioner found that the committee had proven the allegations in Specification No. 5. We agree that respondent violated DR 6-101(A)(3) since he was retained to handle an adoption that he failed to complete. It was no excuse for respondent not to complete his work for the reason that he had not yet received the balance of his fee. He was only due the balance upon completion of the work. However, we do not agree that respondent violated DR 7-102(A)(2) and (3). That disciplinary rule has nothing to do with respondent's actions under this specification.
The final specification of misconduct, No. 6, alleges that respondent failed to cooperate with the committee in its investigation of misconduct in violation of DR 1-102(A)(1), (4), (5) and (6)[26] and Rule 8.4[27] of the new Rules of Professional Conduct.[28]
Since 1985, the committee has called and sent letters and subpoenas to respondent. Other than the filing of his answer, respondent *7 has never made any official responses to the committee, the commissioner or this court. Respondent has also failed to show up at either the committee or the commissioner's hearing. We agree with the commissioner that respondent's continuous failure to cooperate with the committee violates DR 1-102(A)(1), (5) and (6) and Rule 8.4(a), (d) and (g) of the new Rules of Professional Conduct. However, we do not agree that respondent violated DR 1-102(A)(4) and other subsections of Rule 8.4.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Hickman, 471 So.2d 696 (La.1985); Louisiana State Bar Association v. Whittington, 459 So.2d 520 (La.1984).
After several years of practice, respondent, with no prior disciplinary offenses, started a pattern of misconduct beginning in 1985. In two cases, respondent received settlement drafts in the amount of $5,000 and neglected to timely disburse to his clients their share of the drafts. In one case, respondent disbursed the proceeds about four months after he received the draft and in the other case almost two years after he received the draft. For this conduct, respondent is guilty of commingling and conversion, neglecting legal matters entrusted to him, and failing to maintain complete records of his clients' funds and failing to render appropriate accounts to his clients regarding those funds. In another case, respondent withheld money from a settlement to pay a chiropractor's fee that he had guaranteed but never paid. For this conduct, respondent is guilty of neglecting a legal matter entrusted to him. However, unlike the commissioner, we did not find respondent guilty of commingling and conversion and failing to maintain complete records of his client's funds and failing to render appropriate accounts to his client. In two other cases, respondent received money from his clients to handle a collection matter and an adoption, ($150 for the collection matter and $210 for the adoption), but he never completed those cases even though he did perform some of the paper work for them. For this conduct, respondent is guilty of neglecting legal matters entrusted to him. In the collection matter, respondent is also guilty of failing to carry out a contract of employment. Respondent prejudiced his client's interest by losing two of the checks in the collection matter. Finally, respondent failed to cooperate fully with the committee, the commissioner or this court in these proceedings.
Having found respondent guilty of misconduct, we consider that disciplinary action is warranted. However, we do not find respondent's conduct, though serious, warrants disbarment. The facts of this case involve most of the factors contained in the three year suspension category listed in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986). There is no evidence of bad faith, forgery or other fraudulent acts in connection with the conversions. Moreover, there is no evidence of how respondent benefited from his infractions. His clients were injured by his conduct. However, in the conversion cases, respondent did pay his clients the money owed to them, though only after they had retained an attorney and complaints had been lodged with the committee. Respondent has been guilty of no prior disciplinary offenses. Thus, other than non-cooperation with the committee, respondent's conduct fits under the guidelines listed in Hinrichs for three year suspension from the practice of law. It is true that since respondent has been found guilty of not cooperating with the committee, his conduct is more serious than those we have suspended for three years. However, unlike the committee and the commissioner, we do not feel that that difference requires respondent to be disbarred. We feel that respondent's non-cooperation with *8 the committee warrants an extra six months of suspension. Therefore, we find that respondent should be suspended from the practice of law for three years and six months from the date of this decree. However, reinstatement will not be automatic. Respondent may apply for reinstatement after three years and six months upon a showing to the committee that he has refunded the $150 to Mr. Taylor, the $210 to Ms. Young, and after he has paid Dr. Plantz the $550 owed to him.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Charles C. Hayling III be suspended from the practice of law in Louisiana for three years and six months from the date of finality of this judgment with reinstatement conditioned upon respondent's providing proof to the Committee of Professional Responsibility that he has made full restitution of the amounts owed to his clients and Dr. Plantz as aforesaid. Respondent is to bear all costs of these proceedings.
LEMMON, J., concurs and assigns reasons.

APPENDIX
Specification No. 1 alleged:
That you were retained by Pearley Mealey in connection with her claim resulting from an automobile accident which occurred on March 24, 1985. In connection therewith, settlement was made and State Farm Insurance issued a check dated July 12, 1985 made payable to your client, Pearley Mealey, as well as yourself, as Ms. Mealey's attorney. In mid July you went to Ms. Mealey's home in order to have her sign said draft. You negotiated said check and failed, refused and neglected to timely furnish to Ms. Mealey, her portion of the settlement funds, amounting to $3,015.34. It was not until November 19, 1985, that Pearley Mealey was furnished with the sum of $3,015.34. Due to your failure to timely transmit said funds to Ms. Mealey, she obtained the services of another attorney, Ralph Brewer, in order to obtain said settlement funds. The Committee is of the opinion that the above conduct is in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility of the Louisiana State Bar Association.
It is further alleged that you did commingle and convert said funds to your own use, as evidenced by your receipt of the check in the sum of $5,000.00 and your refusal to timely furnish said funds to the rightful owner and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, despite many requests to do so, all in violation of Disciplinary Rule 1-102 and 9-102(A)(B) of the Code of Professional Responsibility of this Association.
Specification No. 2 alleged:
That in your capacity as an attorney, you were retained by Donnie Rogers, in connection with injuries he sustained in an automobile accident which occurred on December 21, 1984. In connection therewith, settlement was made in September of 1985. Your client, Donnie Rogers, received medical treatment from Dr. Thomas Plantz, D.C. As Mr. Rogers' attorney, you guaranteed payment of medical services rendered by the office of Dr. Plantz from any settlement. Dr. Plantz rendered medical services to your client, amounting to $555.00.[1] To date, you have failed, refused, and neglected to furnish the sum of $555.00 to Dr. Plantz, despite repeated requests to do so. The above conduct is in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility of the Louisiana State Bar Association.
It is further alleged that you did commingle and convert said funds to your own use, because of your refusal to furnish the funds to the rightful owner and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, all in violation of
*9 Disciplinary Rule 1-102 and 9-102(A)(B) of the Code of Professional Responsibility of this Association.
Specification No. 3 alleged:
That you were retained by Erma Wheeler in connection with her claim for injuries against Winn Dixie. In connection therewith, settlement was made in the amount of $5,000.00 in April of 1986. Crawford and Company on behalf [of] Winn Dixie issued a check in April of 1986 to you in the amount of $5,000.00. Your client, Erma Wheeler endorsed that check. To date, you have failed, refused, and neglected to furnish your client, with her portion of the settlement, amounting to approximately one-third (1/3) of the $5,000.00 settlement, despite repeated demands to do so. Your client, Erma Wheeler, has retained James Fields, Attorney at Law, to assist her in attempting to obtain her portion of the settlement. The Committee is of the opinion that the above conduct is in violation of Disciplinary Rule 1-102, Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility of the Louisiana State Bar Association.
It is further alleged that you did commingle and convert said funds to your own use, as evidenced by your receipt of the check in the amount of $5,000.00 and your refusal to furnish said funds to the rightful owner and your failure to furnish the Committee with documentary evidence to indicate that these funds were held in trust, all [in] violation of Disciplinary Rule 1-102 and 9-102(A)(B) of the Code of Professional Responsibility of the Association.
Specification No. 4 alleged:
That as Attorney at Law, you were hired by Mr. John Taylor and paid the sum of $150.00 on April 26, 1986,[2] in connection with a collection matter. You have failed, refused, and neglected to take any action on behalf of Mr. Taylor. Despite repeated demands by Mr. Taylor, he was unable to obtain the status of his case from you. In August of 1985, your client, Mr. Taylor, checked the court records and found that you had taken no action on his behalf. The Committee is of the opinion that the above and foregoing conduct is in violation of Disciplinary Rule 6-101(A)(3) and Disciplinary Rule 7-101(A)(2)(3) of the Code of Professional Responsibility of this Association.
Specification No. 5 alleged:
That as an Attorney at Law, you were hired by Ida Mae Williams in connection with an adoption and paid the sum of $210.00 on August 30, 1985. At that time, you told your client, Mrs. Ida Mae Williams Young, that the adoption of Brian Hayes would be complete in six (6) months. In February of 1986, you advised your client, Ms. Young, that all paper work was completed and that you were awaiting a court date. To date, you have failed, refused and neglected to contact Mrs. Ida Mae Williams Young concerning the status of the adoption. Additionally, you have failed, refused and neglected to furnish the Committee with the status of the adoption which you were hired to handle on behalf of Mrs. Ida Mae Williams Young. The Committee is of the opinion that the above and foregoing conduct is in violation of Disciplinary Rule 6-101(3) and Disciplinary Rule 7-102(A)(2)(3) of the Code of Professional Responsibility of this Association.
Specification No. 6 alleged:
In connection with all of the above Committee file numbers, you have failed, refused, and neglected to cooperate with the Committee on Professional Responsibility. You have exhibited a total lack of cooperation and have failed to submit written replies, despite repeated request[s] to do so. In connection with 8554, the Committee filed a Motion For Citation For Contempt because you failed to appear pursuant to a subpoena, despite being personally served. The Committee is of the opinion that the above and foregoing conduct is in violation of Disciplinary Rule 1-102(A)(1)(4)(5)(6) of the Code of Professional Responsibility and Rule 8.4 of the new Rules of Professional Conduct.
*10 LEMMON, Justice, concurring.
As to Specification No. 2, the majority holds that the Bar Association's failure to prove respondent placed the settlement funds in a separate account renders insufficient the proof of conversion of a portion of those funds. I disagree. The Bar Association in this case proved that respondent received a settlement draft which was endorsed by his client and that respondent remitted to the client a portion of the client's share of the settlement funds, while withholding $500 of the client's share to pay a medical bill in accordance with the client's instructions. Proof that respondent, after a period in excess of one year, had failed to use the client's funds in accordance with the client's instructions establishes a prima facie case of conversion of the client's funds, thereby placing the burden on respondent to produce evidence that the funds were not converted. Since respondent failed to meet his burden of proceeding with such evidence, the specification was sufficiently proved.[1]
NOTES
[1] The committee sent several subpoenas to respondent commanding him to appear before it.

The committee also sent other letters to respondent.
[2] According to the commissioner, a registered letter was sent to Mr. Hayling which was signed for him by his wife. The commissioner also stated that he talked to Mr. Hayling on two different occasions, the last being the day before the hearing, and that Mr. Hayling told the commissioner he knew the date, time and place of the hearing and that he was going to come and present evidence.
[3] The specifications of misconduct as drafted by the committee are listed in an appendix to this opinion.
[4] DR 6-101(A)(3) provides:

(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.
[5] DR 9-102(B)(3) provides:

(B) A lawyer shall:
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
[6] DR 1-102 provides:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[7] DR 9-102 provides:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
[8] In respondent's answer, he admitted that he was retained by Ms. Mealey, that he had her sign the settlement draft and that he negotiated the draft. He also claimed that the money that was owed to Ms. Mealey was taken by his wife who was separated from him at the time that he brought the money to his home and that he was unable to retrieve the money until November 19, 1985. Respondent also claimed that an affidavit had been executed by his wife attesting to the above facts. In the commissioner's report, the commissioner stated that he called respondent's wife who stated that she had executed an affidavit but was evasive about what it said. The commissioner also stated that he had never been presented with a copy of any affidavit.
[9] Supra note 6.
[10] Supra note 4.
[11] Supra note 5.
[12] Supra note 6.
[13] Supra note 7.
[14] In respondent's answer, he admitted that he guaranteed payment to Dr. Plantz. However, he claimed that no money was withheld from the funds owed to Mr. Rogers to pay Dr. Plantz. He also claimed that he possessed a disbursement form executed by Mr. Rogers which showed that Mr. Rogers received all of the money. In the commissioner's report, the commissioner stated that he was never furnished with a copy of that form.
[15] Supra note 6.
[16] Supra note 4.
[17] Supra note 5.
[18] Supra note 7.
[19] In respondent's answer, respondent claims that he had put the cash from the settlement in his brief case which was then taken from his car. Respondent told the commissioner that he had affidavits to prove this, but neither the committee nor the commissioner has ever received anything from respondent.
[20] Supra note 4.
[21] DR 7-101(A)(2), (3) provides:

(A) A lawyer shall not intentionally:
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
[22] In respondent's answer, he claims that he had told Mr. Taylor he would not file the suit until Mr. Taylor paid him the filing fee. Respondent claims that the $150 paid to him by Mr. Taylor was not for the filing fee and that he never filed Mr. Taylor's suit because he never received the filing fee.
[23] Supra note 4.
[24] Supra note DR 7-102(A)(2) and (3) provides:

(A) In his representation of a client, a lawyer shall not:
(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
[25] In respondent's answer, he claims that he did not file the adoption papers because he did not have the child's birth certificate. He stated that he never received the certificate and that he finally had to get it himself. He then said that he did not file the papers because Ms. Young would not give him the rest of his fee.
[26] Supra note 6.
[27] Rule 8.4 provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a judge, judicial officer, governmental agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
(g) except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the committee on professional responsibility in its investigation of alleged misconduct; or
(h) present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.
[28] The committee has been in contact with the respondent since the first complaint was filed with it by Ms. Pearley Mealey in September of 1985. Both the committee's and the commissioner's hearings were held in 1987. Since the new Rules of Professional Conduct became effective January 1, 1987, and since the old Code of Professional Responsibility became replaced at that time, respondent's failure to cooperate with the committee since 1985 makes his conduct fall under both the Code of Professional Responsibility and the new Rules of Professional Conduct.
[1] Testimony indicates that this amount was actually $550.
[2] According to the record, Mr. Taylor paid respondent this sum on April 24, 1985.
[1] As to the period of suspension, I recognize that failure to cooperate with the Bar Association is considered as an aggravating circumstance. Standards for Imposing Lawyer Sanctions 9.22(E) (1986). Rather than extend the suspension because of this aggravating circumstance, I would prefer to adhere to the recommendation in Standards for Lawyer Discipline and Disability Proceedings 6.3 (1979) that a suspension should not exceed three years. If the aggravating circumstance is serious enough to remove the case from the three-year suspension category in Hinrichs, then the lawyer should be disbarred.