560 So.2d 435 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Gibson TUCKER, Jr.
Nos. 88-B-0704, 88-B-1696.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Denied December 13, 1989.
Thomas O. Collins, Jr., G. Fred Ours, Elizabeth A. Alston, New Orleans, Robert J. Boudreau, Lake Charles, Trevor G. Bryan, Robert M. Contois, Jr., New Orleans, Frank J. Gremillion, Baton Rouge, William W. Hall, Gretna, Carrick R. Inabnett, Monroe, T. Haller Jackson, III, Shreveport, Christine Lipsey, Baton Rouge, Edmund McCollam, Houma, and Gerard F. Thomas, Jr., Natchitoches, for applicant.
Gibson Tucker, New Orleans, for respondent.
MARCUS, Justice.
The Louisiana State Bar Association through its Committee on Professional Responsibility, instituted disciplinary proceedings against Gibson Tucker, Jr., a member of said association. The committee had previously conducted investigations in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the first proceeding, No. 9060-A (the Boggio matter), which involved three specifications of misconduct, was sent to respondent by certified and regular mail on November 12, 1987. Notice of the second proceeding, No. 9189-A (the Koonce and Glindmeyer matters), which involved four specifications of misconduct, was sent to respondent by certified and regular mail on March 18, 1988. Notice of the third proceeding, No. 9377-A (the Welborn matter), which involved two specifications of misconduct, was sent to respondent by certified and regular mail on March 30, 1988.
The committee held a formal investigative hearing on the specifications as set forth in the Boggio matter on December 14, 1987; on the specifications as set forth in the Koonce and Glindmeyer matters on April 19, 1988; and on the specifications as set forth in the Welborn matter on May 2, *436 1988. Respondent was not present nor was he represented by counsel at the December 14 hearing, but was present, represented himself, and testified on his own behalf at both of the other two hearings. The committee found that the evidence adduced at the hearings supported the charges set forth in each of the specifications and instituted in this court suits for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation.[1] The court, by order, consolidated the two disciplinary actions and appointed Garland R. Rolling as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association, article 15, section 6(b) and (d).
A hearing before the commissioner was held on November 16, 1988. Respondent was present, represented himself, and testified on his own behalf. In his formal report to this court, the commissioner found that specifications one and two of the Boggio matter were not sufficiently proven, but that each of the other specifications were. The commissioner made no recommendation regarding discipline. The committee concurred in the commissioner's findings of fact in each of the specifications and opposed only the conclusions of law in specifications one and two of the Boggio matter. In its brief to this court, the committee recommended that respondent be suspended from the practice of law for a period of six months, with reinstatement to practice being conditioned upon restitution being made to each of the four clients involved. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The specifications of misconduct arose from events involving four separate clients.[2] In each case the committee alleged that Tucker was paid a sum of money when hired, but neglected to deposit said sum in a trust account and failed to render an accounting and to return the unearned portion to the client. These funds were allegedly commingled and converted to Tucker's use. The committee further charged Tucker with failure to cooperate with the committee and in one case with neglect of a legal matter and failure to carry out a contract of employment. Consequently, with regard to each of the four clients, Tucker was charged with violating DR 1-102(A)(1), (4), (5) and (6); DR 2-110(A)(3); DR 9-102(A)(2), (B)(3), (4); and Rules 1.15, 1.16(d), 8.4(a), (c), (d), (g),[3] and *437 in the Welborn matter with violating DR 6-101(A)(3) and DR 7-101(A)(2)[4].
The principal issue involved in each of the cases is whether, under DR 9-102(A), the payments made by the clients to Tucker at the time he was hired constitute client funds or funds belonging to Tucker. Tucker admitted that he received funds from each of the clients and that he did not deposit any of those funds into a trust account. The committee argues that the payments were advance fees for particular services not yet performed. As such, they are client funds and must be deposited in a trust account. Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). We stated in Williams:
[A]n advanced fee for particular services not yet performed constitutes funds of the client which should be placed in a trust account and not withdrawn or withheld without the consent of the client.
Id. at 409.
This was the first time that this court interpreted the disciplinary rules to require that advance fees be placed in a trust account. Prior to Williams, this requirement under the rules was not clear because "funds of clients" was not directly addressed by the rules nor interpreted by this court. Although DR 9-102 requires the placement of "all funds of clients" in an identifiable trust account, there is no specific reference to fees or advance fees. The question then remained whether fees were the same as funds and required the same treatment under the rules. Since Tucker's alleged violations took place prior to our decision in Williams, we do not feel that it would be fair to find that he violated this disciplinary rule. This is particularly true because it is the bar association that bears the burden of establishing the violation by clear and convincing evidence. Having reached this conclusion, we find that the DR 9-102 requirement of rendering an accounting is inapplicable, and the allegations of commingling and conversion must fall.
Nevertheless, Tucker was bound by DR 2-110(A)(3) that "[a] lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned." Thus, although he might have logically concluded that he was not required to place the advance fees in a trust account, he was unquestionably required to refund any unearned amount. His contention that the fee was nonrefundable is without merit. Such a nonrefundable fee is contrary to 2-110(A)(3) which mandates that a lawyer refund any part of a fee not earned. The next question then is whether Tucker earned the entire advance fee from each of the four clients.
In the Boggio matter, Tucker first met with the client at the offices of the referring attorney on October 28, 1985 regarding a custody proceeding. Tucker agreed to handle the case, and required a $1,500 "retainer" which was paid October 30, 1985. Tucker testified that the fee was to *438 look into the case and do whatever needed to be done, including making a court appearance. However, Tucker also argues that even if he did not perform these services, he would still be entitled to the fee because it was nonrefundable. Nevertheless, he did prepare a one-and-a-half page motion to obtain a "ne exeat bond" and a motion to substitute counsel of record. He was discharged sometime before November 19, 1985, prior to filing those motions or making any court appearance. We find that Tucker did not earn $1,500. Although the record is sparse and Tucker did not keep time records, we find that he earned only $750 and is therefore required to refund the remainder, $750.
Mr. Glindmeyer paid Tucker $1,000 in January of 1986 to represent him in a legal malpractice suit against his former lawyers. Tucker reviewed the prior file, wrote several demand letters, filed a petition for damages on February 12, 1986, answered interrogatories, appeared once in court in connection with a motion for summary judgment, and conferred with one of the lawyer defendants. Tucker paid the filing costs and was not reimbursed. He was discharged in June of 1987. We find that Tucker earned the fee of $1,000.
Tucker was retained by Mrs. Koonce on or about May 15, 1986 in a domestic matter dealing with a property settlement. On May 28, 1986, Mrs. Koonce paid Tucker $1,500 to handle her defense. The record shows that Tucker met with Mrs. Koonce twice and researched her case. He conferred with opposing counsel once in an attempt at settlement. He subsequently filed separate exceptions of no cause of action, improper cumulation of actions, improper use of summary process, improper procedure, vagueness, failure to join an indispensable party, together with memorandums in support thereof, and a motion to dissolve a temporary restraining order. These pleadings were filed after Tucker had actually been discharged, but before he became aware of that fact. We find that Tucker earned the $1,500 fee.
Tucker was retained by Mrs. Welborn for $2,000 in October of 1986 to attack a statutory will. Before consulting him, Mrs. Welborn had consulted two other lawyers. The record revealed that before advising Mrs. Welborn against filing the suit, Tucker met with her once, examined the documents she provided to him including the will in question, spoke with her at least four times, contacted a handwriting expert concerning the signature on the will, met with Mrs. Welborn's daughter and son-in-law, and researched the law on attacking a statutory will. Tucker was discharged in October of 1987. No suit had yet been filed at the time of the hearing (November, 1988). We do not find this work sufficient to earn $2,000. We find that Tucker earned $1,000 and is therefore required to refund the remainder, $1,000. We do not find any merit to the specifications of neglect of a legal matter or failure to carry out a contract. The record supports the conclusion that Tucker did investigate the claim and determine that it was meritless.
The commissioner found Tucker guilty of violating Rule 8.4(g) in each of the four matters. We agree. Tucker admitted that he received various letters from the committee in each matter requesting a response concerning the various complaints, but failed to answer or otherwise communicate with the committee.

Discipline
Having found respondent guilty of misconduct, we consider that disciplinary action is warranted. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. Louisiana State Bar Association v. Starr, 515 So.2d 776 (La.1987).
While Tucker's failure to refund the unearned portion of his fee in two matters and his failure to cooperate with the committee are violations of disciplinary rules, he had no dishonest motive. Rather, he truly believed, although incorrectly, that the advance fees were nonrefundable. Furthermore, he did display a cooperative attitude at the hearings and during subsequent *439 proceedings. However, Tucker has previously received one public reprimand and two private reprimands, one with and one without notice. He also has substantial experience in the practice of law.
Taking into account the aggravating factors as well as the mitigating factors, we find that a public reprimand is an appropriate disciplinary action in this matter. In addition, Tucker must refund $750 to Mr. Boggio and $1,000 to Mrs. Welborn.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Gibson Tucker, Jr. be publicly reprimanded for his conduct in these matters. Respondent is further ordered to pay $750 in unearned legal fees to Robert H. Boggio and $1,000 in unearned legal fees to Mrs. Marian Welborn on or before 60 days from the date this judgment becomes final and to furnish proof of said payments to the committee. Upon failing to furnish proof of these payments within said time limit, Gibson Tucker, Jr. shall be suspended from the practice of law until such time as he furnishes proof to the committee that said payments have been made. Respondent is to bear all costs of these proceedings.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., concurs in part and dissents in part.
WATSON, J., dissents.
LEMMON, Justice, concurring.
I agree that respondent should not be disciplined for conduct which occurred prior to our decision in Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1984), which held that an advance fee for services to be rendered in the future constitutes funds belonging to the client that must be placed in a trust account, must be accounted for, and must not be withdrawn by the attorney until the fee is earned.
I disagree, however, that this court should resolve fee disputes. The preferred course of action would be to require respondent to deposit the amount of the funds as to which there is a fee dispute into a trust account and to relegate the parties to civil remedies for resolution of the fee dispute.
DENNIS, Justice, concurring in part, dissenting in part.
I respectfully concur in part and dissent in part.
I concur in the court's finding that the respondent violated Rule 8.4(g) on several occasions by refusing to cooperate with the disciplinary committee and agree that the respondent should be reprimanded for these violations alone.
However, based on my appreciation of the evidence of record in this case I am unable to say that it shows clearly and convincingly that the respondent failed to refund any part of a fee paid in advance that had not been earned.
Also, it is unfortunate that we did not take the opportunity presented by this case to reconsider the rule created by our statement in LSBA v. Williams, 512 So.2d 404 (La.1987), concerning an attorney's duty in handling advanced fees:
The determination whether a fee paid in advance of services is classified as the client's funds or as the attorney's funds turns on the purpose of the payment. A retainer which secures the attorney's general availability to the client and which is not related to the fee for a particular representation constitutes the attorney's funds and need not be placed in a trust account. On the other hand, an advanced fee for particular services not yet performed constitutes funds of the client which should be placed in a trust account and not withdrawn or withheld without the consent of the client. Lawyers' Manual on Professional Conduct § 45:101 (1984).
512 So.2d 404, 408-409.
That language, in effect, treats law firms or attorneys differently by allowing those firms which are retained on a regular basis by clients to deposit the retainer into the firm account and use the funds to meet *440 operating expenses, while those firms or attorneys who are retained by clients to handle a particular matter are required to deposit their retainers into client trust accounts, with the funds being available only as they become earned.
Other states have recognized the complexity of the problem and thus have given it more consideration. Some have recognized that there are at least four categories into which advance payments made to an attorney may fall. For example, the Florida Bar Committee on Professional Ethics, acknowledging that the term "retainer" no longer has a definite meaning, has chosen to look to the agreement between the lawyer and the client to determine whether funds constitute advanced fees or a nonrefundable retainer. Money intended to pay a lawyer for being available to represent the client in specified or unspecified matters is a nonrefundable retainer that need not be placed in a trust account. Security for an unearned fee, however, must go into a trust account. If money transferred to a lawyer is made up of both these types of funds, the lawyer should place it all in a trust account but may withdraw the retainer portion immediately. Prepaid fees, or money that a client sends to a lawyer for legal services to be performed and that the client intends to be the lawyer's property, need not be placed in a trust account. ABA/BNA Lawyers' Manual on Professional Conduct, 45:105.
The Texas State Bar has likewise distinguished four different situations: (1) The attorney agrees to represent a client on an hourly basis that will be billed monthly, but the client is required to pay some amount at the start of the representation. This is an advanced fee, and, until completely earned, belongs in part to the client and in part to the attorney; thus, it must be deposited into a trust account. (2) The same agreement is made, except that part of the advance is a retainer that will not be refunded but will be applied to hourly work done by the lawyer. The nonrefundable retainer belongs to the lawyer and need not be placed in a trust account, but the remainder of the advance belongs partly to the client and, therefore, must be placed into a trust account. (3) The attorney agrees to represent a client for a reasonable fee to be determined and billed at the end of the representation, but requires an upfront "retainer" that will be applied against the final fee. This refundable advance belongs partially to the client and thus must be placed into a trust account. (4) The attorney charges a flat fee payable in advance, with no understanding reached regarding the refundability of the fee. Since there has been no guarantee that the attorney is entitled to a nonrefundable fee, the funds should be deposited into a trust account. ABA/BNA Lawyers' Manual on Professional Conduct, 45:105.
Of course, all retainers, even so-called "non-refundable" retainers, are subject to the requirements that no fee be excessive and that unearned fees be refunded to the client. DR2-106(A); DR 2-110(A)(3). For the small practitioner, however, there may be a huge difference between having retainer funds available to meet operating expenses, and perhaps being liable to return some portion of them, and not having the funds available for use until after the work has been completed.
Other states have found that no advanced fees should be considered "funds of clients" under DR 9-102(A) and, therefore, need not be deposited in a client trust account, but are subject only to the requirement that unearned fees be returned to the client upon termination of the representation. ABA/BNA Lawyers' Manual on Professional Conduct, 45:10545:106.
At least one state has gone so far as to conclude that the deposit of a retainer in a client trust account would be a violation of the prohibition of the commingling of attorney and client funds, since a retainer, by definition, is a lawyer's property upon receipt. Wisconsin Bar Formal Opinion E-86-9, reported in National Reporter on Legal Ethics, WI:Opinions:14, 1986.
It is clear that the problem is a complex one that is deserving of more attention by this court.

ON REHEARING
PER CURIAM.
In our original majority opinion, this court found that respondent violated Disciplinary *441 Rule 2-110(A)(3) in two instances by failing to refund portions of fees paid in advance which had not been earned. On rehearing, we conclude that the bar association did not prove by clear and convincing evidence that respondent failed to fully earn the fees which were paid in advance. Accordingly, the portion of our original opinion finding respondent guilty of these violations and ordering him to pay back fees or be suspended, is vacated.
We adhere to the conclusion reached in our original opinion, however, that respondent's failure to respond to written requests by the Committee concerning each of four complaints constituted four violations of Rule of Professional Conduct 8.4(g), which prohibits failure to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct. These violations warrant the sanction of a public reprimand.

DECREE
For the reasons assigned, it is ordered, adjudged, and decreed that Gibson Tucker, Jr. be publicly reprimanded for his violations of Rule of Professional Conduct 8.4(g) by failing to respond to written requests by the Committee on Professional Responsibility. Respondent is to bear all costs of these proceedings.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents, adhering to the original opinion.
LEMMON, Justice, concurring in the denial of rehearing.
Respondent was not disciplined for failing to place in a trust account the advanced fees he received for services to be performed in the future, or for using these funds before they were earned, or for failing to account for these funds. It is therefore not necessarily appropriate to grant a rehearing for the purpose of reconsidering a rule that was not applied in this case. Nevertheless, the separate opinion by Justice Dennis on original hearing raises some weighty questions about a rule that is not set out with specificity in the disciplinary rules and has not been fully considered by this court. Because lawyers are entitled to guidance on this complex issue, this court is in the process of implementing a committee study to recommend an amendment to the disciplinary rules regarding the handling of retainers and advanced fees.
I also write separately to note that disputes over whether fees have been partially or fully earned are usually more appropriately resolved by civil remedies rather than in disciplinary proceedings. Moreover, failure to cooperate with the disciplinary agency is more appropriately viewed in most cases as an aggravating factor rather than a separate and independent disciplinary violation. This determination should be made on a case-by-case basis.
NOTES
[1] 88-B-0704 deals with No. 9060-A. 88-B-1696 deals with Nos. 9189-A and 9377-A.
[2] The alleged misconduct spanned a period beginning in October of 1985 and continuing until about the summer of 1987. Since the new Rules of Professional Conduct became effective January 1, 1987, and since the old Code of Professional Responsibility became replaced at that time, respondent's conduct falls under both the Code of Professional Responsibility and the new Rules of Professional Conduct. Louisiana State Bar Association v. Hayling, 529 So.2d 1 (La.1988).
[3] DR 1-102 provides in pertinent part:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
DR 2-110(A)(3) provides:
(A) In general.
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
DR 9-102(A)(2) and (B)(3) and (4) provide:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
The new rules are essentially identical to the old disciplinary rules in this case. The only significant variation is that the exception of DR 9-102(A) allowing the deposit of costs and expenses into an operating rather than trust account is no longer found in Rule 1.15.
Since the committee action took place exclusively after January 1, 1987, only the new rules apply to Tucker's alleged failure to cooperate.
Rule 8.4(g) provides:
It is professional misconduct for a lawyer to:
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
[4] DR 6-101(A)(3) provides:

(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.
DR 7-101(A)(2) provides:
(A) A lawyer shall not intentionally:
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.