WICKER, Justice Ad Hoc.*
The Louisiana State Bar Association, through the Committee on Professional Responsibility (Committee), brought proceedings against Patrick H. Harrington, an attorney. Both the Committee and Mr. Harrington appeal the findings and recommendation of the Disciplinary Board of a three month suspension of Mr. Harrington from the practice of law. We affirm the findings but reduce the penalty to a public reprimand.
The case has its origin in 1978, when John Borden’s eye was splashed with Roundup, an herbicide. Mr. Borden sought medical treatment for the injury, which left him legally blind in the affected eye within the first sixty days after the splashing. Two years later, he changed doctors to one nearer his home, John Cooksey, M.D. Ten years of treatment ensued, during which Mr. Borden’s vision waxed and waned; but Dr. Cooksey eventually did a corneal transplant which restored Mr. Borden’s sight. Allegedly, during all this time, Mr. Borden was trying to collect on an accident policy which would pay him for total and irrevocable loss of vision occurring within sixty days of the accident. He was unable to get his initial treating physician to send his records and a report either to the insurance company or to him.
Dr. Cooksey also experienced difficulty getting Mr. Borden’s previous records, so he sent a summary of his findings and treatment during the last ten of twelve years to the insurance company. Of course, Dr. Cooksey’s records and report did not reflect the immediate post-accident course of the injury; and the insurance company denied coverage in January of 1990 because Mr. Borden was not blind during the first sixty days after the accident. It was at this point that Mr. Borden went to Mr. Harrington for legal help and saw his paralegal, Charles Bayne. Mr. Bayne telephoned Dr. Cooksey about a revised medical report. Dr. Cooksey told Mr. Bayne to put the request in writing, and Mr. Bayne complied.
This is the letter which prompted Dr. Cooksey’s complaint to the Bar Association:
As we discussed on the telephone the other day, I require a letter to me stating *632 certain things in order to get the insurance company to pay Mr. Borden for his loss of eyesight. The following things are what I need in order to get his insurance claim paid.
1. I must have a statement from you that you have reviewed Mr. Borden’s medical records and that he had totally lost his eyesight in the first sixty (60) days from his accident.
2. This loss of eyesight must be irrecoverable. This means that at the time of the accident the medical opinion was that his eyesight could not be restored.
3. I can have no mention of any surgery or recovery of eyesight in this report. The insurance company has indicated that they will not pay if he has recovered his eyesight, even though it was ten years later through surgery.
Dr. Cooksey, please keep in mind that the loss of eyesight must be total. Also please review your file for any past correspondence you may have had with this insurance company. They are denying Mr. Borden’s claim at this time based upon some of your previous findings.
I believe you can overcome any past findings you may have indicated to the insurance company by stating that you have reviewed the original medical records concerning Mr. Borden. Their letter declining to pay the insurance claim is based upon the fact that Mr. Borden did not see you until November of 1980. This was two years after the accident.
This letter bore the signature of Mr. Bayne as Mr. Harrington’s paralegal.
Dr. Cooksey then advised Mr. Bayne that he required Mr. Harrington’s signature on the letter, so Mr. Bayne sent out the same letter with the computer-generated signature of Mr. Harrington. As a result, Dr. Cooksey filed his complaint.
The Committee sent Mr. Harrington two letters asking for a response, and Mr. Harrington ignored both letters. Consequently, the Committee instituted disciplinary proceedings with two specifications of misconduct: soliciting an allegedly false opinion letter and refusing to cooperate with the investigation. The case was set before a hearing committee in Shreveport, and Mr. Harrington requested a change of venue because the chairman of the committee was from the same firm as his opponent in a bitterly-contested court proceeding and the amount of negative publicity he’d had in the Shreveport press made it impossible for him to have a fair hearing. This change of venue was denied.
The hearing committee concluded that neither Rule 1.2(c), 3.1, 3.4(a), (b), nor 4.1 of the Rules of Professional Conduct applied to count one. It did, however, consider the provisions of Rule 8.4(a), (c), (d) to be applicable to the conduct:
It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
[[Image here]]
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) Engage in conduct that is prejudicial to the administration of justice;
[[Image here]]
The committee did not believe that a violation of this rule had been proved by clear and convincing evidence.
The committee found, with regard to count two, that Mr. Harrington violated Rules 8.1(c) and 8.4(g) dealing with the duty to cooperate with an investigation of professional misconduct. For this violation, it recommended a six-month suspension from the practice of law.
This recommendation and the underlying findings were reviewed by the Disciplinary Board (Board), which affirmed the factual findings but concluded that the six-month suspension should be reduced to three months “even though there is evidence of respondent’s repeated prior failures to co-operate_” The Board went on to “condemn, as inappropriate, the type of letter and the context in which the letter was transmitted to Dr. Cooksey as potentially being inappropriate conduct of an attorney *633 or paralegal of an attorney for whom the attorney is ultimately responsible....”
Mr. Harrington objected to the findings and recommendations of the Board on several grounds: using “failure to cooperate” as a separate substantive basis for suspension, imposing suspension as a penalty, ignoring his venue objection, and making “gratuitous statements.” The Bar Association’s Disciplinary Counsel objected on other grounds: not finding Mr. Harrington guilty of ratification or failure to supervise and recommending a brief rather than longer suspension.
The standard of proof for ethical violations is by clear and convincing evidence. La.Sup.Ct.R. 19, Sec. 18(C). Our standard of review is an independent one, which does not require a finding that the Committee or Board was in clear error in order for us to disregard its recommendations. LSBA v. Boutall, 597 So.2d 444 (La.1992). CHANGE OF VENUE
Disciplinary proceedings are governed by the Code of Civil Procedure. La. Sup.Ct. 19, Sec. 18(B). Thus, Mr. Harrington’s entitlement to a change of venue depends “upon proof that he cannot obtain a fair and impartial trial because of the undue influence of an adverse party, prejudice existing in the public mind, or some other sufficient cause.” La.C.Civ.P. art. 122. We do not believe Mr. Harrington met his burden of proof on this issue. Further, the ruling in favor of Mr. Harrington on the substantive complaint demonstrates the fairness and impartiality of the hearing committee and Board.
COUNT ONE (The Medical Report)
Dr. Cooksey testified that he was contacted by Mr. Bayne about two months after he operated on Mr. Borden. Mr. Bayne was seeking recovery on Mr. Borden’s behalf from the insurance company for a bill that Mr. Borden had paid when the insurance company didn’t. Mr. Bayne wanted information on Mr. Borden, so Dr. Cooksey told him to put his request in writing. He believed that Mr. Bayne was asking him to provide a report that would not be accurate.
On cross examination Dr. Cooksey seemed to concede that Mr. Borden might have been legally blind within the first sixty days and that his sight could not have been restored, based upon the early medical records that he finally obtained. However, two years later, when he first saw Mr. Borden, the vision had vastly improved after Dr. Cooksey’s first week of treatment. Mr. Borden’s vision then deteriorated again over a ten-year period. Dr. Cook-sey thought paragraph three of the letter was trying to hide something from somebody. He did admit that his only contact was with Mr. Bayne, not Mr. Harrington. He also admitted that his initial report to the insurance company did not reflect the condition of Mr. Borden’s eye right after the accident, since he was referring to his own initial treatment two years later when Mr. Borden did improve.
Mr. Bayne testified that he was working for Mr. Harrington as a paralegal when Mr. Borden sought help in getting his accident insurance recovery since his first doctor wouldn’t give him his records. He testified that he asked Dr. Cooksey to review the first doctor’s records to see if there was a loss of sight during the first sixty days, and Dr. Cooksey asked him to put this in a letter. After receiving the letter with Mr. Bayne’s signature, Dr. Cooksey told him he needed a letter with Mr. Harrington’s signature.
I asked him [Dr. Cooksey] was there anything wrong with the letter at that time. He said, “No, there is nothing wrong with it.” I said, “Well, can I send you the same letter with a computer signature on it,” and he said, “Sure.”
Mr. Bayne testified that he did not discuss the letter with Mr. Harrington and admitted that he added the computer signature on his own although he was not supposed to do that. Mr. Bayne noted that Dr. Cook-sey seemed to be concerned about medical malpractice at one point. Mr. Bayne believed that the insurance company already knew all about Mr. Borden’s surgery and recovery, since it had Dr. Cooksey’s original report. He thought the insurance company wanted to know what happened be *634 fore Dr. Cooksey’s involvement in the case. “They wanted to know, did he lose his eyesight, and was it unrecoverable in the sixty days after the accident.”
On cross examination Mr. Bayne testified that he drafted this letter on his own because he didn’t think the situation fit the form letter usually used to request medical records. He did not have Mr. Harrington review the letter, although he admitted he almost always did so.
On re-direct Mr. Bayne testified that what he tried to get from Dr. Cooksey was what the insurance company said it wanted: loss of sight within the first sixty days.
Leroy Harvard Scott, Jr., an attorney, testified for Mr. Harrington as a character witness. Mr. Scott knew Mr. Harrington in a personal capacity since childhood and also in a professional capacity. He knew nothing adverse about Mr. Harrington with regard to honesty, truthfulness, and general moral qualities. All Mr. Harrington’s dealings have been completely above board. Mr. Scott concluded that Mr. Harrington is controversial and that his advertising and client solicitation have aggravated some people. “It appears to me at least that there has been a tremendous aggravation factor that has gotten a lot of people down on Pat [Harrington] and some of them in high places.”
We do not believe that this is clear and convincing evidence of a violation of Rule 8.4(a)(c) or (d).
Mr. Bayne’s testimony is unrebutted that he drafted the letter on his own, that he did not show it to Mr. Harrington before sending it out, that he added Mr. Harrington’s signature, and that this was the first and only time he had done such a thing. We note that neither Mr. Bayne’s nor Mr. Harrington’s conduct resulted in any detriment to Mr. Borden, Mr. Harrington’s client. We also do not believe there was clear and convincing evidence that Mr. Harrington either ratified Mr. Bayne’s conduct or failed to supervise him, violations of Rule 5.3. LSBA v. Keys, 567 So.2d 588 (La. 1990), is an example of failure to supervise. There the attorney permitted his secretary/office manager to write checks on accounts containing client funds for fifteen months without his ever reviewing bank statements or cancelled checks.
COUNT TWO (Failure to Cooperate)
The Bar Association sent Mr. Harrington two letters, on July 12, 1990, and August 6, 1990, asking him to respond to Dr. Cooksey’s July 5th complaint. Mr. Harrington admittedly ignored both letters but alleged in his answer to the formal complaint that he would present evidence of extenuating circumstances. This he failed to do. We believe that this admission and the lack of extenuating circumstances constitute clear and convincing evidence of a violation of Rules 8.1(c) and 8.4(g).
We must consider both aggravating and mitigating factors in fashioning the appropriate penalty. LSBA v. Fish, 562 So.2d 892 (La.1990).
Mr. Harrington’s prior disciplinary history is the most grievous aggravating factor before us. He has previously been suspended from the practice of law for nine months and for twelve months, these suspensions to run concurrently. LSBA v. Harrington, 585 So.2d 514 (La.1990) and In re Harrington, 589 So.2d 479 (La.1991). He only began practicing law again in March of 1992. The violations charged and proven against Mr. Harrington in these proceedings were serious ones; however, he has already been punished for these offenses. He also has had two private reprimands and two admonitions for failing to respond to complaints during 1989,1990, and 1991. He certainly should have known by July and August of 1990 that letters from the Bar Association demand answers.
In mitigation, we note that Mr. Harrington did ultimately cooperate with the investigation, that his actions caused no harm to his client, that he has only recently begun to reestablish his law practice, that he may have been confused over three separate disciplinary proceedings going on at the same time, and that he furnished character evidence on his behalf.
This court considered the appropriate sanction for failing to cooperate with an *635 investigation in LSBA v. Tucker, 560 So.2d 435 (La.1989). The underlying charges against Mr. Tucker were dismissed; but he, like Mr. Harrington, already had both public and private reprimands. In addition he was neither present nor represented at one of the hearings. We concluded that these violations warranted a public reprimand, and we believe Mr. Harrington’s violations are similar enough to warrant a similar discipline.
DECREE
It is ordered, adjudged, and decreed that Patrick H. Harrington be publicly reprimanded for his violations of Rules of Professional Conduct 8.1(c) and 8.4(g). Mr. Harrington must pay all costs of these proceedings.
LEMMON, J., concurs.
DENNIS, J., concurs in part and dissents in part with reasons.

 Judge Thomas C. Wicker, Jr. of the Fifth Circuit was assigned by the Court to sit in place of Associate Justice Pike Hall, Jr., recused.